Motion to dismiss appeal denied March 31; rehearing denied April 7; argued on merits October 8; affirmed in part November 5, 1936

## EARLE *v.* HOLMAN ET AL.

(55 P. (2d) 1097, 61 P. (2d) 1242)

*C. O. Fenlason,* of Portland, for Philip Explosives Co.

*Moe M. Tonkon, Calvin N. Souther,* and *Wilbur, Beckett, Howell & Oppenheimer,* all of Portland, and *Hesse & Franciscovich,* of Astoria, for R. G. Clarke and others.

*I. H. Van Winkle,* Attorney General, for defendant.

*James L. Conley,* of Portland, for D. H. Cameron et al.

*Carson & Carson,* of Salem, for Laura Hotchkiss.

KELLY, J. Motions have been interposed by D. H. Cameron, ancillary receiver of Union Indemnity Company, intervener, Willamette Construction Company, a corporation, claimant, G. F. Owens, claimant, and Laura Hotchkiss, claimant, to dismiss the appeal of Philip Explosives Company, a corporation, claimant, which is prosecuting its appeal alone, and the appeal of R. G. Clarke, K. E. Fahlstrom and N. Sable, claimants, who have joined in prosecuting an appeal.

As one ground for dismissal, both motions urge that this court is without jurisdiction of the subject matter, because this proceeding is special and statutory and no appeal is authorized or provided by the statute prescribing the procedure to be observed in cases of this character.

In support of this contention movents cite *In re Estate of Goldsmith,* 12 Or. 414 (7 P. 97, 9 P. 565), which holds that the insolvent act then in effect granted a jurisdiction by virtue of a special statutory authority to be exercised over a subject not within the ordinary jurisdiction of courts of justice.

Movents also cite *Portland v. Gaston,* 38 Or. 533 (63 P. 1051), which holds that, in the absence of legislative enactment to the contrary, it is probable that an appeal will lie from the judgment or decrees of the cir-

cuit court. That is a case involving an assessment of damages caused by the opening and establishment of a street. The charter of the city provided for an appeal to the circuit court and a trial by jury in that court, and also provided that the verdict should be a final and conclusive determination of such assessment. This provision of the charter was held to be controlling in respect to the right of appeal.

*Macartney v. Shipherd*, 60 Or. 133 (117 P. 814, Ann. Cas. 1913D, 1257), is also cited. There it is held that an order denying a motion for a new trial is not appealable.

*Portland v. White,* 106 Or. 169 (211 P. 798), also cited, declares the rule that where a particular jurisdiction is conferred upon an inferior court, its decision, when acting within its jurisdiction, is final unless provision is made for appeal therefrom. This was an attempted appeal from a judgment of the circuit court rendered upon an appeal from the municipal court of the city of Portland. We note the following statement in the opinion:

"It is not a matter over which the Circuit Court exercises jurisdiction independently of the Constitution and statutes of the state."

*Cohn v. State Tax Commission,* 118 Or. 92 (245 P. 1085), also cited, holds that the statute imposing a tax on incomes is complete within itself, and no right of appeal having been awarded in this special statute for the collection of taxes on incomes, this court was without jurisdiction to entertain such an appeal.

The distinction between these cases and the case at bar is obvious. Independently of constitution or statute, the circuit court, as a court of general jurisdiction,

is authorized to make distribution of trust funds. In that regard, it is not a court of inferior or limited jurisdiction, there is no express legislative inhibition against an appeal in cases of this character, the decree herein is not analogous to an order overruling a motion for a new trial nor to an order of a tax commission levying a tax upon incomes.

Courts of equity are vested with jurisdiction over trust funds independently of the constitution and statutes of the state. In such cases the right of appeal exists by virtue of the general statute irrespective of whether or not the special statute governing a change in procedure so declares: *In re N. P. P. B. M. v. Ah Won et al.*, 18 Or. 339 (22 P. 1105). Claimants herein had the right to prosecute an appeal.

It is urged that both of these appeals should be dismissed because said appellants failed to file with the clerk of the circuit court a notice of appeal with proof of service endorsed thereon showing service of such notice of appeal on E. M. VanDeVenter, Ole Carlson, Mary Carlson, Donald Woodward, Inc., a corporation, W. P. Fuller & Company, a corporation, or L. H. Hoffman, claimants herein, or on any attorney for any of said parties.

█ Except as to Mary Carlson, the defects in the return of service of this notice of appeal are corrected in amended returns which are tendered by the appellants. Mary Carlson is not a party to the decree. A claim based upon a judgment rendered in favor of Mary Carlson and Ole Carlson was allowed in favor of Ole Carlson alone. Mary Carlson submitted to this entry and can not now be deemed to be an adverse party upon whom service of notice of appeal is required.

■ The claims of Donald Woodward, Inc., W. P. Fuller & Company and L. H. Hoffman were disallowed by the trial court on January 21, 1935. The decree, from which these appeals are prosecuted, was entered on November 19, 1935, and amended on January 7, 1936. We mention this in order that we may not be understood as holding that these three claimants, last above named, are adverse parties upon whom service of notice of appeal is required.

■ The return of service of the notice of appeal of Clarke, Fahlstrom and Sable is incorporated in and a part of the return of service of the undertaking on appeal, and this return accompanies the notice of appeal and undertaking on appeal. Strictly speaking, the return is not endorsed upon the notice of appeal. It is however attached to the notice of appeal and undertaking. The cases cited to this point by movents are *Catlin v. Jones,* 56 Or. 492 (108 P. 633) ; *Muckle v. Columbia County,* 56 Or. 146 (108 P. 120) ; *Lane v. Wentworth,* 69 Or. 242 (133 P. 348, 138 P. 468). In these cases, no return of service was filed with the notice of appeal. In the case at bar, the return was irregular and defective and, hence, subject to amendment.

Appellants have moved to be permitted to file an amended return which corrects the irregularities and defects in the original return. Such procedure has received the sanction of this court: *In re Santiam Reclamation Co.,* 128 Or. 140 (247 P. 1077) ; *Northwestern Clearance Co. v. Jennings,* 106 Or. 291, (209 P. 875, 210 P. 884) ; *Mitchell v. Coach,* 83 Or. 45 (153 P. 478, 162 P. 1058) ; *Barbre v. Goodale,* 28 Or. 465 (38 P. 67, 43 P. 378).

It is urged by movents that a defective acknowledgment of service is not subject to amendment by supple-

mentary proof of service. We find no distinction in principle between such amendment and one which is made by a supplementary acknowledgment of service. The basis in both instances is that the original defect may be corrected by showing the true facts upon which the jurisdiction of the court depends.

■ It is also argued by movents that the omission from appellants' return of service by mail of their notice of appeal of the phrase, "at his office or place of residence", is fatal to the jurisdiction of this court. This argument is based upon the fact that this return of service is upon a separate piece of paper from the notice of appeal and that when service is made by mail the statute requires that the notice so mailed be addressed to the office or place of residence of the party so served: Oregon Laws 1933, p. 349, chap. 238, amending section 7-404, Oregon Code 1930. We think that such a return may be amended.

■ It is further contended by movents that the interests of Clarke, Fahlstrom and Sable are separate and distinct from each other and are conflicting one with the other. In this regard, attention is called to the fact that the fund in dispute is not sufficient to pay all claimants in full and that the allowance on appeal of the claim of any one of these appellants would cause a ratable diminution in the distributive share of the others, if such claims are also allowed on appeal. We are told by movents that thus it would be to the interest of each of these three appellants to burke the appeal of the other and thereby ratably increase his own recovery, if successful on this appeal.

To this point, movents cite *Legro v. The Drainage Commissioners, Etc.*, 297 Ill. 155 (130 N. E. 369), which is a case wherein several landowners sought to appeal

jointly from an order reclassifying the lands in a drainage district. There, the court say:

"Whether the appeal be joint or several in cases of this character, the complaint of each land owner must be heard as to the correctness of the classification of his particular land."

In the case at bar, the amounts of the claims represented by the appellants are not in dispute. Two of them arise because each claimant recovered a judgment against a third party who carried indemnity insurance with the Union Indemnity Company. In one instance, the Union Indemnity Company reinsured another insurance company in which the judgment debtor had a policy issued by another company. The third claim arises because of a policy upon a safe.

It is manifest that these appellants are jointly interested in determining whether their claims, which appear to be based upon indemnity insurance, may participate in the distribution of funds which are declared by the statute to "be held in trust for all holders, within the state of Oregon, of the obligations of such insurance company which originated through the writing of either surety or fidelity contracts within the boundaries of the state of Oregon: Oregon Laws, Second Special Session, 1933, Chap. 42, p. 121, amending section 46-1401, Oregon Code 1930. Their position is analogous to that of the appellants in *In re Sutro's Estate*, 152 Cal. 249 (92 P. 486, 1027), wherein all of the appellants were interested in upholding the provisions of a will which the trial court had held to be invalid.

The motions of appellants to amend their returns of service of their respective notices of appeal are sustained and leave so to amend is granted. The motions to dismiss these appeals are overruled.

Argued on the merits October 8; affirmed in part November 5, 1936

ON THE MERITS

(61 P. (2d) 1242)

In Banc.

Appeal from Circuit Court, Marion County.

L. G. LEWELLING, Judge.

Suit by A. H. Averill, as State Insurance Commissioner, against Rufus C. Holman, as State Treasurer, and D. H. Cameron, ancillary receiver of Union Indemnity Company for Oregon, to obtain an adjudication of the rights of claimants to securities deposited by the Union Indemnity Company with the State Treasurer, wherein the Philip Explosives Company, R. G. Clarke, K. E. Fahlstrom, and N. Sable and others filed claim. Hugh H. Earle, Insurance Commissioner, was substituted for the plaintiff, Averill. From a decree disallowing the claims of the named claimants, they appeal.

Decree affirmed as to the claims of Clarke, Sable, and Fahlstrom and, as to claim of the Philip Explosives Company, reversed and cause remanded, with directions.

*C. O. Fenlason*, of Portland, for appellant Philip Explosives Co.

*Moe M. Tonkon* and *Calvin N. Souther*, both of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, and Hesse & Franciscovich, of Astoria, on brief), for appellants Clarke, Fahlstrom and Sable.

*James L. Conley*, of Portland, for respondent Cameron.

*Andrew Koerner,* of Portland (Dey, Hampson & Nelson and James C. Dezendorf, all of Portland, on the brief), for respondents Standard Oil Co. of California and William C. McDuffie.

BAILEY, J. This suit was instituted by A. H. Averill, as insurance commissioner of the state of Oregon, against Rufus C. Holman, as state treasurer of the state of Oregon, pursuant to § 46-139, Oregon Code 1930, as amended by chapter 43, Oregon Laws, Second Special Session, 1933. Hugh H. Earle, present insurance commissioner, was later substituted for the plaintiff Averill. The purpose of the suit is to obtain an adjudication of the rights of claimants to securities totaling $25,000 in value, deposited in compliance with the provisions of § 46-1401, Oregon Code 1930, by Union Indemnity Company, a corporation organized under the laws of Louisiana. The proceedings had in the circuit court were almost identical with those detailed in the case of *Averill v. Holman,* decided September 29, 1936 [60 P. (2d) 968]. From a decree disallowing their respective claims, R. G. Clarke, K. E. Fahlstrom, N. Sable, and Philip Explosives Company have appealed.

For many years prior thereto and until January 6, 1933, Union Indemnity Company was engaged in writing liability policies and surety bonds in the state of Oregon, in addition to other kinds of insurance contracts. On the date mentioned the company was adjudicated insolvent, in the state of its domicile, and a receiver was appointed by the court to administer its affairs. D. H. Cameron was thereafter appointed ancillary receiver of the company for Oregon.

On September 5, 1931, Union Indemnity Company deposited with the state treasurer of Oregon, pursuant

to § 46-1401, supra, registered gold 4½ per cent bonds of the state of Louisiana of the par value of $26,000.

The Clarke and Sable claims of $4,033.35 and $300 respectively are alleged to have arisen out of casualty insurance issued by Union Indemnity Company. The Fahlstrom claim of $2,056.80, exclusive of interest, is founded upon alleged reinsurance by Union Indemnity Company of a casualty insurance policy issued by another company. The claim of Philip Explosives Company, for $6,602.37, is based upon a surety bond issued by Union Indemnity Company for work to be performed in the state of Washington, which bond is asserted to have been executed by that company in the state of Oregon, although such statement is denied by the ancillary receiver.

Claims totaling in excess of $50,000, against the deposit, were allowed by the circuit court, some of which were ordered paid as preferred. Other demands exceeding $25,000, including those here involved, were disallowed.

The ancillary receiver of Union Indemnity Company, the Standard Oil Company of California and the ancillary receiver of Richfield Oil Company of California, hereinafter to be referred to as the respondents, urge that the decree of the circuit court should be affirmed as to the individual claimants who have appealed, because of the defective character of claim as to a part of them, and because of failure of proof as to all of them. We have before us in the present case the transcript of the proceedings relative to these claims in the circuit court. And it is maintained by these claimants that the colloquy between the court and attorneys for the various parties narrowed the issues to be decided by the circuit court to the question of whether the se-

curities deposited by Union Indemnity Company pursuant to § 46-1401, *supra*, covered claims arising out of casualty and reinsurance business done by that company. In view of the conclusion which we have reached, hereinafter to be expressed, it will be unnecessary to decide the issue as to the sufficiency of the claims and the evidence introduced to support them, although we shall assume for the purposes of this decision that such claims were sufficiently established.

We shall first direct our attention to the Clarke and Sable claims, which are based entirely upon demands against Union Indemnity Company arising out of casualty insurance written by that company. The only question as to those claims, other than the sufficiency of proof thereof, is whether they are entitled to be satisfied out of the deposit made by Union Indemnity Company with the state treasurer pursuant to § 46-1401, *supra*. It is the claimants' contention that the legislature in enacting chapter 203, General Laws of Oregon 1917, of which the section now codified as 46-1401 formed a part, intended that the protection afforded by such deposit should extend to all persons having claims against Union Indemnity Company by virtue of all classes of insurance business done by that company in the state of Oregon under the sanction of chapter 203, *supra*. On the other hand, the respondents assert that the deposit should be devoted exclusively to claims arising out of the surety and fidelity business, as defined by chapter 203, *supra*, done by Union Indemnity Company in the state of Oregon.

In order to arrive at the intent of the legislature it will be necessary to examine in some detail said chapter 203, which has been codified as chapters I, IV, V, X, XIII, XIV, XVI and XVII of Title XLVI, Oregon Code

1930. Sections 1 to 20, inclusive, of the original act (§§ 46-101 to 46-132, inclusive, and 46-135 to 46-142, inclusive, Oregon Code 1930) are comprehensive provisions relating to the duties of the insurance commissioner, defining words and terms used in the act and applying generally to all insurance companies doing business under the act.

Section 46-101, *supra*, defines insurance as "a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event, whereby the insured or his beneficiary suffers loss or injury". Section 46-117, subdivision 1, *supra*, defines an insurance company in the following language: "A company, association, partnership or individual engaged in the business of insurance, or suretyship, or of guaranteeing against liability, loss or damage, or of entering into contracts substantially amounting to insurance, shall be deemed an insurance company". This section prohibits insurance companies from doing any insurance business except as authorized and permitted by the laws of Oregon and in compliance with such laws. Subdivision 2 of the same section provides that, "A company may be licensed to make any or all insurance and reinsurance comprised in any one of the following numbered subdivisions", listing and defining eight types of insurance, thus: fire and marine, life, disability, casualty, surety, credit, title and livestock.

The fourth kind, casualty, is defined as insurance "against liability of the insured for the death or disability of another or for loss or damage suffered by the assured or another in his person or property, resulting from accidental causes other than fire, marine and inland navigation hazards, from explosion of steam

boilers and engines \* \* \* and against loss by burglary, theft and forgery''. Surety insurance is defined as ''guaranteeing the fidelity of persons holding places of trust, the performance of contracts and bonds and undertakings including the signing thereof as surety''.

Section 5-a of the original act, now codified as § 46-118, Oregon Code 1930, is as follows:

''Any insurance company which has qualified to transact its appropriate business in this state may be licensed to transact any of the classes of insurance defined in this section or permitted under the laws of this state and which it may transact under the provisions of its charter or articles of incorporation and the laws of the state in which it has its home office or United States department office. (2) Provided, that if such company elects to transact more than one of such classes of insurance, it shall be required to pay an additional fee of $25 per annum for each of such additional classes as it may be authorized to transact under its certificate of authority and the annual license which may be issued to it.''

After these general provisions the act is divided into six main parts, each preceded by one of the following subtitles: ''Domestic Insurance Companies'' (§§ 21 and 21-a to 21-t), ''General Provisions Relating to All Fire Insurance Companies'' (§§ 22 and 22-a to 22-m), ''General Provisions Relating to Mutual Fire Insurance Companies'' (§§ 23 and 23-a to 23-u), ''General Provisions Relating to All Life Insurance Companies'' (§§ 24 and 24-a to 24-c), ''Provisions Relating to Surety Companies'' (§§ 25 and 25-a to 25-c), ''Provisions Relating to Interinsurance Exchanges'' (§§ 27 and 27-a to 27-l).

Under each of the above mentioned subtitles some of the sections are preceded by subheads explana-

tory in general of the contents of the sections. All these subtitles and subheads are a part of the enrolled bill as enacted by the legislature. They are as much a part of the act itself as anything else contained in it and are to be resorted to in case of ambiguity or doubt as to the legislative intent. These subtitles and subheads as found in the act passed by the legislature are not to be confused with the subtitles and explanatory headings in any codification of Oregon statutes. In so far as the explanatory headings in the code are not found in the original session laws, they are no part of the statutes themselves and were merely inserted by the code publishers for convenience in reference.

We are here principally concerned with § 25 of the act of 1917 (§ 46-1401, Oregon Code 1930). This section is preceded by the subtitle, "Provisions Relating to Surety Companies", which grouping contains also this subheading, "Surety Companies; Conditions Under Which They May Do Business". Subdivision 1 of this section prescribes the amount of paidup capital and surplus required of the company before it can transact "business as surety on obligations of persons or corporations" and provides that the company pay annually a license fee of $100 in advance. Subdivision 2 of this section requires a foreign insurance company before being granted certificate of authority to transact "the business of fidelity and surety insurance" to deposit with the treasurer of the state money or bonds of the United States, this state or other states to the actual par and market value of not less than $25,000. Subdivision 3 of this section is as follows:

"The said money or bonds so deposited with the treasurer of [this] state shall be held in trust for all holders of the obligations of such insurance company, to

remain with said treasurer in trust, to answer any default of said company as surety upon any such obligation established by final judgment upon which execution may lawfully be issued against said company; * * * Such company shall not be permitted to withdraw from the state treasurer such deposit or money or bonds for a period of one (1) year after discontinuing business within this state, or [nor] while any suit is pending or any judgment against said company in this state, *or while any suit is pending or any judgment against said company in this state* shall remain unpaid. * * *''

Subdivision 4 of § 25 is as follows:

''Should any such company named in this act fail or refuse to pay any loss by it incurred·in this state within sixty (60) days after its liability thereupon shall have been by suit finally determined, upon satisfactory proof, to the treasurer of this state, of such liability and of its nonpayment said treasurer shall, out of the deposits so made with him, as by this act provided, pay said loss, and when he shall have done so he shall at once certify to the insurance commissioner the fact of such default on the part of said company, whereupon said commissioner shall forthwith revoke the authority granted to such company and cancel its license to transact business in this state. * * *''

■ Under the broad definitions of ''insurance'' and ''insurance companies'' hereinabove set out, Union Indemnity Company was, in the writing of surety and fidelity bonds, an insurance company engaged in insurance business in the state of Oregon. By complying with the provisions of the law relating to surety business, however, it was not entitled to engage in all or any of the several other branches of insurance covered by the act. The general provisions of the act relating to all insurance companies apply to Union Indemnity Company in its conduct of surety business, except in so

far as they are in conflict with the specific provisions regulating that business. Companies engaged in the different classes of insurance as defined by the act are required to deposit cash or securities with the state treasurer as a condition precedent to doing business in the state of Oregon only in the case of surety business transacted by foreign companies (§ 46-1401, *supra*) and the business of foreign or alien fire insurance companies (§ 46-1603, Oregon Code 1930).

By chapter 109, Oregon Laws 1931, foreign or alien companies doing casualty business, except reciprocal exchanges, are required to deposit $25,000 in approved securities with the insurance commissioner as a condition of doing that class of business in this state. We are not here, however, concerned with that requirement, inasmuch as the only deposit involved in this case is that made by Union Indemnity Company under § 46-1401, *supra*, as a condition of being granted permission to write fidelity and surety bonds in this state.

In order for Union Indemnity Company to engage in any other branch of insurance in this state, provided its articles of incorporation permitted it so to enlarge its business, it would have been necessary for that company to pay to the State of Oregon an additional license fee of $25 for each additional class of business undertaken (§§ 46-1401 and 46-118, *supra*), and to comply with the special provisions of the law relating to the conduct of the added class or classes of insurance business. Likewise, a foreign company authorized to transact casualty insurance business in this state would not be entitled to write surety and fidelity bonds here without depositing securities of the market value of $25,000 and complying with the special provisions of the act relating to surety companies.

■ A careful consideration of all the provisions of chapter 203, *supra*, leads us to the conclusion that the securities deposited by Union Indemnity Company with the state treasurer as a condition precedent to doing surety and fidelity business in the state of Oregon have reference to that class of business exclusively and are not available to policyholders and others having claims against that company arising out of any other class of insurance written by that company in the state of Oregon. It was not the intention of the legislature to extend to those protected by casualty insurance written by a company also engaged in fidelity and surety business any greater protection than afforded those insured by companies doing only a casualty business.

The business conducted by a surety company is of an entirely different character from that done by other insurance companies. Many of its bonds are for the protection of states, municipalities and other public bodies, conditioned upon the performance of public contracts and duties of public officials, or given for the protection of funds of estates, the enforcement of judgments, and other like purposes. Because of the nature of the business transacted by surety companies the legislature in enacting the insurance code deemed it essential that foreign companies before being authorized to do such business in this state should be required to make a deposit of securities similar to that made by Union Indemnity Company.

Reverting to subdivision 3 of § 25, chapter 203, *supra*, we note that said deposit "shall be held in trust for all holders of the obligations of such insurance company, to remain with said treasurer in trust, to answer any default of said insurance company as surety upon

any such obligation established by final judgment, upon which execution may lawfully be issued against said company". In referring to "the obligations of such insurance company" in this section, the legislature undoubtedly intended thereby to refer to the obligations of such company arising from the surety business done by it. The phrase "such insurance company" limits the application of the remainder of the paragraph to surety companies exclusively. The fund expressly provided by that paragraph is to remain with the state treasurer "in trust, to answer any default of said company *as surety* upon any such obligation" [italics supplied]. The obligations referred to are those arising from undertakings given by the company as surety, and not from any other insurance business written by the same company.

The language of subdivision 3 of § 25, *supra* (§ 46-1401, Oregon Code 1930), forbidding the withdrawal of money or bonds from deposit with the state treasurer until one year after discontinuing business in this state has reference to surety business done by such company in the state, and does not apply to any other class of insurance. In other words, a company doing both a surety and a casualty business in Oregon and later discontinuing its surety business could not be required to continue its deposit with the state treasurer beyond a year after discontinuing its surety insurance business, but would be entitled to withdraw it while still doing other classes of insurance business after ceasing to do the particular class of business for which the deposit was made. The prohibition also against withdrawal of the deposit while any suit is pending or any judgment "against said company" remains unpaid relates only to suits and judgments arising out of the fidelity and

surety business done by that company, and does not refer to suits and judgments arising out of other insurance policies issued by such company.

The appellants Clarke, Sable and Fahlstrom cite and rely upon the following cases: *Brim v. American Surety Company,* 175 La. 41 (142 So. 910); *Smith v. Home Accident Insurance Company,* 142 So. 912; *Lyon Lumber Company v. Home Accident Insurance Company,* 175 La. 476 (143 So. 379); *Eads v. Southern Surety Company,* 178 Ga. 348 (173 S. E. 163); *Ford v. Lone Star Cement Co.,* 181 Ga. 212 (181 S. E. 773); *Republic Ins. Co. v. Cunningham,* 62 S. W. (2d) 339.

It must be borne in mind in considering the authorities cited by both the appellants and the respondents that, as admitted by all parties to this litigation, the statutes referred to in such cases differ materially from the Oregon statute here under consideration. The case of *Republic Ins. Co. v. Cunningham,* supra, was reversed by the commission of appeals, whose opinion was adopted by the supreme court of Texas in *Cunningham v. Republic Ins. Co.,* 94 S. W. (2d) 140. No further consideration need be given that case, for the reason that what was said in the final opinion therein does not aid us in any way in solving the problem here presented.

The three Louisiana cases all grew out of the insolvency of Home Accident Insurance Company, which company was engaged in Louisiana in writing workmen's compensation insurance. By an act passed in 1921 by the Louisiana legislature it was enacted that all guaranty, fidelity, surety and bond companies doing business in that state should deposit with the state a bond in the sum of $50,000 "in favor of the governor of the state of Louisiana for the use and benefit of all creditors in the state of Louisiana, with one or more

guaranty, fidelity, surety or bond companies who are authorized to do business in this state as surety or sureties thereon, * * * said bond or deposit to be held subject to any claim, lien or judgment that may be judicially obtained against them in the courts of this state, or the federal courts in this state, *or arising from any contract of insurance, or indemnity, or fidelity, or guaranty entered into [in] this* state" [italics supplied]. A Louisiana act of 1908 required all classes of insurance companies, except surety companies, certain types of plate glass insurance companies and fraternal societies, to furnish annually a bond in the sum of $20,000, payable to the state treasurer, to insure prompt payment of all claims arising against them in the state. The Home Accident Insurance Company deposited a $50,000 bond, given by American Surety Company as surety, but did not deposit any $20,000 bond.

In the Brim case, *supra,* the contention was made that the conjunction "and" should be substituted for the disjunctive "or" in the statute relating to the liability of the surety company. The court, however, held that the context of the statute did not justify that substitution. It further held that the giving of a $50,000 bond "enabled the Home Accident Insurance Company to write workmen's compensation insurance as well as the other classes of insurance referred to in the statute". The opinion also stated that the deposit of this bond enabled Home Accident Insurance Company to "withdraw from the state the collateral which, but for defendant's act, would be subject to execution under plaintiff's judgment against the principal".

The decision in *Smith v. Home Accident Insurance Company,* supra, is based upon the holding in the Brim

case and does not add anything to what was said in the former decision.

The same matter arose later in *Lyon Lumber Company v. Home Accident Insurance Company*, supra. There the court again reviewed the entire subject and arrived at the same conclusion announced in the other two cases. It is there pointed out that Home Accident Insurance Company might have obtained the privilege of writing workmen's compensation insurance in Louisiana by giving a bond of only $20,000, but that instead of giving such a bond it gave one of $50,000 under the provisions of the 1921 act and thereby acquired the privilege of doing the business of a guaranty, fidelity, surety or bond company. The bond as actually given provided that "the Home Accident Insurance Company shall make prompt payment of all claims arising and accruing to any person during the term of said bond, by virtue of any contract of insurance or indemnity or fidelity or guaranty, entered into in this state". The court further observed: "It is not necessary to decide now whether a foreign corporation that gives the bond for $50,000, under the provisions of act No. 58 of 1921 (Ex. Sess.), for the privilege of doing business as a guaranty, fidelity, surety or bond company, in Louisiana, is thereby authorized and qualified to do any and all other kinds of insurance business in this state. It is sufficient to say that, if a foreign insurance company does give the bond required by the act of 1921 for the privilege of doing business in Louisiana as a guaranty, fidelity, surety or bond company, and does, by virtue of the privilege so obtained, carry on the business of writing other kinds of insurance, such as workmen's compensation insurance, the bond will cover any claim arising from any such contract of insurance."

In the case at bar it was not necessary for Union Indemnity Company to make a deposit of any securities in order to qualify for doing casualty insurance business in this state. Nor did that company acquire the right to do any class of insurance business other than surety insurance, by virtue of the deposit of securities made by it. In the Louisiana cases the bond given by the surety company on behalf of Home Accident Insurance Company was broad enough in its scope to cover all insurance business done by the latter company, and both the surety company and the insurance company must have assumed that the giving of such bond obviated the furnishing of a lesser bond for the sole purpose of writing workmen's compensation insurance.

In the Georgia case of *Eads v. Southern Surety Company*, supra, the opening statement of the opinion is as follows:

"The Southern Surety Company, a nonresident corporation, made a deposit of securities with the state treasurer of Georgia, as provided by statute, and obtained a license to engage in the business of writing bonds in this state. The company executed bonds as surety for contractors, and also bonds or contracts indemnifying individuals against loss by reason of damage by them to person or property of others."

Later the surety company became insolvent and a receiver was appointed. "Prior to the receivership, a person who had been injured by one holding an indemnity contract as indicated above obtained" a judgment against the insured and the surety company.

An act passed by the Georgia legislature in 1896 and amended in 1897 provided that every surety company doing business in that state "which offers or undertakes to become security upon any bond required

by law of city, county and state officers, before being accepted as surety thereon" should deposit with the state securities of certain designated character. That act provided that upon the occurrence of *"any loss insured against"*, the insured, in order to secure his recovery, might give notice to the state treasurer, and that official was required thereupon to sell the securities and devote the proceeds to satisfaction of the judgment. In 1912 the Georgia legislature passed an act establishing a department of insurance, and § 27 of that act provided in part that "before any surety, or bonding company shall write any bonds in this state" it was required to deposit the sum of $25,000 with the state treasurer. The court held that the 1912 enactment by reference "draws into it and makes a part thereof the provisions of the act of 1896 as amended by the act of 1897, except as to the character of bonds contemplated by that law and the character of the deposit required to be made with the treasurer of the state". After making the foregoing statement the court proceeded as follows:

"In lieu of these, section 27 of the act of 1912 contemplates 'any bonds' other than the class of bonds specified in the former act, and, as to the right to engage in writing such other bonds, requires the specified deposit in money only in the event the company has not already made deposit with the treasurer in character and amount as required by the act of 1896 as amended by the act of 1897."

Both statutes there under consideration referred to the business of issuing bonds and the court in construing them concluded that the contract effecting casualty and surety insurance was in the nature of a bond, and, as such, was within the purview of either statute, according to the class of insurance it represented. Upon

assuming that position, it was logical for the court to hold that the securities which were required to be deposited covered claims arising out of casualty insurance. The Georgia statutes are essentially different from the Oregon law, and therefore that decision does not throw any light upon the question here before us.

The other Georgia case, *Ford v. Lone Star Cement Company*, supra, had to do only with the priority of claims under the Longshoremen's and Harbor Workers' Compensation Act, as to whether the findings and award of the federal deputy commissioner "constituted a lien upon the fund in court".

The respondents cite and rely upon *Southern Pacific Co. v. Lion Bonding & Surety Co.*, 294 S. W. 599, and *Gulf Refining Co. v. Home Indemnity Co.*, 78 Fed. (2d) 842. The statutes involved in both those cases are in some respects similar to the one controlling in the case at bar, but there are other features which differentiate them. In both those cases it was held that the bond given as security for transacting surety business was limited to that class of business, and the reason advanced by the court is in accord with what has already been said in this opinion. There is no need of making further exposition of the facts involved in those adjudications.

■ Our attention is directed by the individual appellants to the latter part of § 25-a, subdivision 3, *supra* (§ 46-1402, subdivision 3, Oregon Code 1930), reading as follows: "* * * and generally, it shall be lawful for such a company or corporation to enter into any contract of indemnity or surety with any person, partnership, association, or corporation; *provided*, that such contract is not otherwise prohibited by law or against public policy." It is then reasoned that by virtue of that provision a surety company, by comply-

ing with the provision relating to surety companies and without doing anything further, is authorized to enter into all contracts of indemnity, which, the claimants say, would include casualty insurance. The above-quoted excerpt must be interpreted in connection with the language of the entire subdivision, and when so read it is apparent that the legislature contemplated only such contracts as would indemnify or provide security for "any contract of guaranty or suretyship executed" by such surety company.

■ Both the appellants and the respondents depend upon chapter 42, Oregon Laws, Second Special Session, 1933, as a legislative construction of the meaning of subdivision 3 of § 46-1401, *supra*. They refer in particular to subdivision 3, § 46-1401, as amended by said chapter 42, reading in part as follows:

"The said money or bonds so deposited with the treasurer of this state shall be held in trust for all holders, within the state of Oregon, of the obligations of such insurance company which originated through the writing of either surety or fidelity contracts within the boundaries of the state of Oregon, to remain with said treasurer in trust, to answer any default of said company as surety upon any such obligation established by final judgment upon which execution may lawfully be issued against said company."

The appellants contend that, by amending this subsection so as to make definite that the bond is given only to protect obligations originating in the writing of fidelity and surety contracts, the legislature thereby changed the law from what it had previously been. On the other hand, the respondents insist that the legislature was merely making certain and definite what the law had always declared. We do not believe that the amendment of this subsection was intended to alter

the meaning of the act as originally written in so far as affects the question now under consideration. Whatever rights the parties to this litigation may have to this fund accrued prior to the amendment, and a change in the law subsequent in time could neither enlarge nor diminish such rights.

The Fahlstrom demand is based upon a judgment obtained against one William Denk for personal injuries inflicted by Denk upon Fahlstrom in the operation of an automobile. Denk was protected by a policy of casualty insurance issued by New York Indemnity Company, which risk, according to the claimant, was reinsured by Union Indemnity Company. The contract of reinsurance is not before us, and therefore we must assume that it is the ordinary form of reinsurance. We shall not here make any conjecture as to the terms of the contract between insurer and reinsurer, nor shall we attempt to discuss the cases and authorities cited by appellants construing the legal effect of different forms of reinsurance.

In order to issue such reinsurance in this state it was not necessary for Union Indemnity Company to qualify as a surety company and make the deposit of securities required of companies engaged in that class of business, and therefore such reinsurance does not entitle the claimant to share in the proceeds of the securities deposited by Union Indemnity Company. That deposit with the state treasurer was no more intended for the protection of reinsurance risks than for the original insurance of the same class of risks.

The claim of Philip Explosives Company, as hereinbefore stated, arises out of a bond written by Union Indemnity Company. The facts, briefly, are as follows: In 1931, C. R. Johnson, a resident of Portland,

entered into a contract with the United States of America to furnish all labor and materials in connection with grading and falsework on the Randle-Yakima unit of a national forest road project in Rainier National Forest in Lewis county, state of Washington. This work was in charge of the Federal Bureau of Public Works, Department of Agriculture. The main office of the bureau is located in Washington, D. C., with divisional and regional offices at various places, one of said regional offices being maintained in Portland, Oregon. The Portland office includes in its jurisdiction the states of Washington, Oregon and Montana.

When the United States contemplates letting a contract for work on public roads in a territory under the immediate jurisdiction of the Portland regional office, plans and specifications are prepared by the local engineers and submitted by the Portland office to the divisional office in San Francisco, and then to the head office in Washington, D. C. As soon as the San Francisco divisional office has approved the plans and specifications the Portland office advertises for bids, which are received and opened in that office. All bidders are required to use a standard form of bid, and if the bid submitted is found by the Portland office to be in proper order that office forwards the lowest bid to the Washington, D. C., office, with the recommendation that it be accepted. Based on the recommendation of the Portland office, and in order to expedite execution of the contract and bond, the Portland office at the time the recommendation is forwarded to Washington, D. C., prepares a contract and bond in triplicate, and these are submitted to the contractor for execution by contractor and surety respectively. The contractor signs the contract and bond in triplicate, and the bond is

signed by the contractor's surety, and these instruments, together with certificate showing authority of the agent of the bonding company to execute the bond, are delivered to the Portland regional office. That office then "checks the contract and bond to see that they are properly executed, and checks to see that the surety company is one that is licensed to do business in the state where the bond is signed, and/or work is located, and that the agent signing the same appears to have due authority. If the work, for example, is in the state of Washington and the surety signs the bond by its Oregon agent, the surety must be licensed in the state of Oregon for the bond to be acceptable; a bond executed by a Washington agent of the surety will be accepted if the surety is duly licensed in the state of Washington, but a bond would not be accepted, even though the work was in the state of Washington, if signed by an Oregon agent, the surety not being licensed in Oregon, even though the surety were duly licensed in the state of Washington."

In the event that the contract and bond are found to be correct, they are forwarded by the Portland office to headquarters in Washington, D. C., where the contract is signed on behalf of the government by the secretary of agriculture or one of his assistants, and the printed approval form on the bond is signed on behalf of the government. In about 15 days or three weeks after the Portland office has forwarded its recommendation of award, notice is received from the headquarters office in Washington, D. C., that formal award of the contract has been made.

The usual and customary procedure, as above outlined, was adopted and followed in respect to the contract and bond here in question. The bond accompany-

ing the contract and signed by Union Indemnity Company was executed by M. L. Gilbert, attorney in fact of that company in the state of Oregon, in Portland. Attached to the bond is a "certificate of ratification" by the vice president and assistant secretary of the corporation at its home office, reciting that "the company does hereby ratify and confirm the action of M. L. Gilbert, attorney in fact, in the execution" of such bond. It is stipulated between the parties that the requiring of "such certificate of ratification seems to have been exclusively for the purpose of showing that the power of attorney of the executing agent had not been revoked and was in force at the time of the execution."

M. L. Gilbert, who signed the bond in question on behalf of Union Indemnity Company as its attorney in fact in Oregon, had been commissioned by that company as its agent in this state. He was not, however, authorized as agent of that company to execute on its behalf surety bonds in the state of Washington or elsewhere.

Between January 4 and August 5, 1932, Philip Explosives Company, a corporation of the state of Washington, at the special instance and request of said C. R. Johnson, sold and delivered to said Johnson explosives, dynamite, fuses, caps, lead wires and like materials, of the agreed and reasonable value of $6,954.92, which materials were intended for and were used in the performance of Johnson's contract. On that amount there was paid the sum of $352.55, leaving a balance of $6,602.37. Judgment was entered by the federal court, western district of the state of Washington, southern division, on February 19, 1935, in favor of Philip Explosives Company and against Union Indemnity Company and Charles T. Peterson, receiver for the said Union Indemnity Company in the state of Washington,

in the sum of $6,602.37, together with interest thereon at the rate of 6 per cent per annum from August 5, 1932.

Philip Explosives Company takes the position that the surety bond furnished by Johnson to the United States government was executed by Union Indemnity Company in the state of Oregon; that the provisions of § 46-1401, *supra*, have reference to and contemplate all surety bonds executed in the state of Oregon; and that since Philip Explosives Company has a claim against Union Indemnity Company by virtue of a bond written in Oregon, it is entitled to share in the securities deposited by that company with the state treasurer as a condition precedent to its doing business in this state. In opposing this claim the respondents argue that the bond was not executed in the state of Oregon, but in Washington, D. C. They further contend that regardless of the place of execution of the bond the contract for which it was given as security was for work to be performed in the state of Washington; that Philip Explosives Company was not an Oregon corporation; and that the claim which it had against the surety company was for materials furnished by it to the contractor in the state of Washington.

It is not here necessary to go into the question of whether the contract and the bond as security for the performance thereof should be construed according to the laws of the District of Columbia, or of the states of Washington or Oregon. All that we are concerned with is whether Union Indemnity Company in writing said bond was transacting the business of fidelity and surety insurance in the state of Oregon, and whether such business was done pursuant to authority granted that company by § 46-1401, *supra*.

According to the undisputed facts hereinabove set forth, most of which are stipulated by the parties, Union Indemnity Company was transacting a surety insurance business in the state of Oregon at the time M. L. Gilbert as attorney in fact of that company signed the bond in question. The government would not have accepted the bond as so executed, had that company not been authorized to transact that class of business in the state of Oregon, or had Gilbert not been its duly authorized agent in Oregon. The "certificate of ratification" executed by Union Indemnity Company at its home office was "exclusively for the purpose of showing that the power of attorney" of the executing agent, M. L. Gilbert, had not been revoked and was in force at the time the bond was executed. Such ratification by certificate was not a re-execution of the bond by Union Indemnity Company. Within the meaning of § 46-1401, *supra,* the writing of such bond constituted the transaction of surety insurance business by Union Indemnity Company in the state of Oregon.

The bond here involved was furnished by Johnson, the contractor, pursuant to 40 U. S. C. A., § 270. This section provides that all persons entering into contracts with the United States Government for the construction of any public work shall be required to furnish to the government the usual penal bond, with the additional obligation that such contractor shall promptly make payment to all persons supplying him with labor and materials in the performance of the work contemplated by such contract. It further provides that in the event that the contractor does not make payment for work and materials so furnished, the persons furnishing the same shall have a right against the surety, which right shall be enforced by proceedings "in the district court of the

United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere".

The requirement of the federal statute just referred to, of bringing suit in the federal court in the district where the work is performed, to recover against the surety company on the contractor's bond, is depended upon by the respondents to bolster up their claim that the securities deposited with the state treasurer of Oregon were not intended to be available for claimants against the surety company by virtue of a bond of this kind. This contention is based to a large extent upon the wording of § 46-1401, *supra*, subdivisions 3 and 4. Subdivision 3 in referring to the deposit made by the surety company prohibits the withdrawal thereof "while any suit is pending or any judgment against said surety company in this state shall remain unpaid". Subdivision 4 provides that should "any such company named in this act fail or refuse to pay any loss by it incurred in this state within sixty (60) days after its liability thereon shall have been by suit finally determined", the state treasurer would be required, upon satisfactory proof of such liability and nonpayment, to pay such loss out of the deposit made with him.

It is asserted by the respondents that the claim of Philip Explosives Company was a loss incurred by Union Indemnity Company in the state of Washington. The word "incur" is defined by the Funk & Wagnalls Dictionary as "to render liable to something". In *Great Western Oil Co. v. Lewistown Oil & Refining Co.*, 91 Mont. 146 (6 P. (2d) 863, 866), the word "incur" is defined as "to become liable for". The decision in

*Weinberg Co. v. Heller,* 73 Cal. App. 769 (239 P. 358), adopts the definition of "incur" given by Webster's Dictionary, as follows: "to become liable or subject to; to render liable or subject to".

At the time Union Indemnity Company executed this bond in the state of Oregon it then and there rendered itself liable or subject to pay any claim against the contractor, principal in said bond, which the said contractor might fail to pay in the prosecution of the work which he had contracted to do. The claim of Philip Explosives Company against Union Indemnity Company arose from a default of the contractor which *occurred* in the state of Washington; but the loss for which the surety company is liable was *incurred* when that company assumed liability by executing the bond in the state of Oregon.

The mere fact that the creditors of the contractor were required in the first instance to seek relief against the surety company in the federal court for the district in which the work was performed does not preclude such creditors, in case of the insolvency of the surety company, from proceeding against the deposit in this state to obtain the unpaid balance of the judgment recovered against the surety company in the federal court in the state of Washington.

The deposit of securities of the actual value of $25,000 with the state treasurer of Oregon was a condition precedent to Union Indemnity Company's transacting any surety business in this state. Such deposit must undoubtedly have been intended by the legislature as a guaranty fund for the fulfillment of obligations undertaken by a foreign insurance company in this state. In granting authority to foreign insurance com-

panies to do business in Oregon, this state was interested in maintaining the integrity of all contracts of surety insurance written in Oregon by virtue of such authority. The mere circumstance that the work contemplated by the contract to which a bond written in this state was referable, was to be performed in another state, should not, unless expressly provided by statute, withdraw the protection of the deposit from those for whose benefit such bond was given.

We have considered the numerous authorities, principally from Ohio, cited by both the appellant Philip Explosives Company and the respondents, relative to the right of Philip Explosives Company to share in the deposit. Those decisions construe statutes materially dissimilar to our own and do not assist in the determination of the question here presented.

Our attention has been directed by the respondents to the amendment of § 46-1401 and § 46-139, *supra,* by chapters 42 and 43 respectively, Oregon Laws 1933, Second Special Session. These amendments were made subsequent to the accrual of the rights of Philip Explosives Company and after Union Indemnity Company had become insolvent, and the legislature could not by amendment defeat the right of that claimant to share in the deposit made by Union Indemnity Company.

Our conclusion is that Philip Explosives Company should share in the fund realized from the sale of securities deposited, *pro rata* with those claimants whose demands the circuit court allowed as not preferred, its share to be proportioned to its claim for $6,602.37 with interest thereon at the rate of 6 per cent per annum from August 5, 1932, to January 6,

1933, and the costs and disbursements awarded Philip Explosives Company by the federal court in the suit hereinbefore mentioned, in which it recovered judgment against Union Indemnity Company.

It follows that the decree of the circuit court as to the claims of Clarke, Sable and Fahlstrom is affirmed, and as to the claim of Philip Explosives Company is reversed. The cause will be remanded to the trial court for such further proceedings as are not inconsistent with this opinion. None of the parties to this appeal shall recover costs or disbursements in this court.

BELT and KELLY, JJ., not sitting.