Argued March 22; reversed April 12, 1938

# `BANK OF CALIFORNIA NATIONAL ASSOCIATION v. SCOTT ET AL.

(78 P. (2d) 342)

Department 1.

*Allan G. Carson*, of Salem (Carson & Carson, of Salem, on the brief), for appellant Hotchkiss.

*Thos. G. Greene*, of Portland (James L. Conley, of Portland, on the brief), for plaintiff Bank of California National Association.

*I. H. Van Winkle*, Attorney General, and *J. M. Devers* and *J. W. DeSouza*, Assistant Attorneys General, for State Highway Commission.

RAND, J.   On June 4, 1931, one C. R. Johnson entered into a contract with the Oregon State Highway Commission, whereby he undertook to grade and surface a section of the Lakeview-Burns state highway.   To provide the necessary funds for carrying out the contract, Johnson, from time to time and during the progress of the work, borrowed from the Bank of California, the plaintiff herein, large sums of money and, to secure the payment thereof to the bank, he executed and delivered to the bank an assignment in writing of all moneys then earned or thereafter to be earned under said contract.   The first assignment of these moneys was made on February 16, 1932, and was in form an absolute assignment.   Upon its delivery to the Commission, it refused to accept said assignment because not drawn in accordance with its own form of assignment.   Later and on February 26, 1932, on

a form provided by the Commission and forwarded to Johnson, Johnson again assigned all said moneys to the bank, subject, however, to a provision contained therein which read:

"* * * provided, however, that nothing herein shall in any manner supersede or defeat the state's prior and superior claim and interest in and to said funds, nor shall this assignment in any manner vest in the assignee any interest in said funds prejudicial to the interest and claims for labor or material."

Both of said assignments were indorsed as consented to by the Union Indemnity Company, the surety on the penal bond given by Johnson to the Commission to secure his faithful performance of the covenants contained in his contract for the doing of the work. The bank never received any notice that the first assignment had not been accepted by the Commission nor of the fact that the second assignment had been made, but that was not the fault of the Commission but of the party who represented Johnson in the transaction.

The work contracted by Johnson has been fully performed and all moneys earned under the contract have been paid by the Commission to Johnson, or to his assignee, the bank, except the sum of $10,891.53, which sum was tendered into the court by the Commission in the instant suit and deposited with the clerk to be distributed, as the court might direct, to the parties found to be entitled thereto.

After the deposit of said moneys into court, Laura Hotchkiss, the appellant herein, intervened in said suit and she now appeals from a decree entered therein, holding that she is not entitled to any part of said fund and that the bank is entitled to the whole thereof.

After the moneys earned or to be earned by Johnson had been assigned to the bank and while the work was still in progress, Laura Hotchkiss, at the special instance and request of Johnson, furnished board and provisions to his employees who were at the time engaged in the performance of the work. She rendered statements of her account to Johnson and the amount of her charges was deducted by Johnson from the wages of said employees respectively but no part of the sums so deducted was paid by him to her.

To recover the amount due her from Johnson, Laura Hotchkiss brought an action in the circuit court for Marion county and recovered a judgment against Johnson and the surety. That action was brought in the name of the state for the use of the plaintiff and the judgment was entered in her favor in accordance with the provisions of section 49-702, Oregon Code 1930. In said action a writ of attachment and a notice of garnishment was served on the Commission but no return thereon was made by the Commission.

After the entry of said judgment, the Union Indemnity Company, a foreign corporation, became insolvent and a receiver of its assets and property was appointed in the state wherein its principal office and place of business had been maintained and an ancillary receiver was appointed to take charge of its assets and property in this state. In order to qualify it to transact business in this state, the Union Indemnity Company had deposited with the state treasurer certain securities and, after it had become insolvent, a suit was instituted by the insurance commissioner of this state against the state treasurer, pursuant to section 46-139, Oregon Code 1930, as amended by chapter 43, Oregon Laws, 2d Special Session, 1933. The rights of the

various claimants to be paid from these securities were adjudicated and thereafter, by order of the court in said suit, these securities were sold and the proceeds thereof distributed in conformity with the order and decree entered in said suit. See *Earle v. Holman,* 154 Or. 578 (55 P. (2d) 1097, 61 P. (2d) 1242). In such distribution, the Bank of California was not entitled to participate since it had no claim against the bond. See *State v. United States F. & G. Co.,* 125 Or. 13 (265 P. 775). But Laura Hotchkiss was one of the persons protected by the bond and she received her proportionate part of said proceeds and applied the same in partial satisfaction of her judgment. After crediting the same on the judgment, there is now due and owing thereon the sum of $2,087.75 with interest at the rate of 6 per cent per annum from the 5th day of February, 1937.

At the time these proceedings were instituted, there was due and owing to the bank for moneys advanced by it to Johnson, after crediting the account with all sums received from the Commission, a sum of money considerably in excess of the sum of $10,891.53, which is the unpaid balance earned by Johnson and deposited in court. Before the money had been deposited in court, the bank demanded payment to it by the Commission of the balance then in the hands of the Commission, and, upon its refusal to pay said sum, the bank commenced these proceedings to compel payment thereof.

The bank contends that, by virtue of the absolute assignment made by Johnson on February 16, 1932, of all moneys earned and to be earned under his contract, it is entitled to be paid the entire sum now on deposit in court. Its argument is that the power of the State Highway Commission to contract is purely statu-

tory and the statute is the measure of that power, as was held in *State v. United States F. & G. Co.*, supra. Upon that ground, it contends that there is no authority conferred by statute authorizing the Commission to disregard the assignment and withhold payment of the ·funds to the bank.

By section 44-111, Oregon Code 1930, the State Highway Commission is given general supervision over all matters pertaining to the construction of state highways and the letting of contracts therefor, and is authorized to contract for the improvement and construction of such highways, and also to make such rules and regulations as it may deem necessary to carry out the provisions of the act.

Section 44-130, Oregon Code 1930, provides that all contracts for the improvement of state highways shall be made in the name of the State of Oregon and be executed by the Commission, and on all such contracts a satisfactory bond shall be required of the contractor of not less than 50 per cent of the total amount of his bid, to secure the faithful performance of the contract.

Section 49-701, Oregon Code 1930, in part, provides that:

"Every contract made with the state * * * shall contain a condition that the contractor shall promptly, as due, make payment to all persons supplying to such contractor labor or material for the prosecution of the work provided for in such contract, * * * and that said contractor shall not permit any lien or claim to be filed or prosecuted against the state * * * on account of any labor or material furnished, and a penal bond, with good and sufficient sureties, shall be required of each and every such contractor to secure the faithful performance of all the usual or particular

obligations of such contract, especially the conditions herein mentioned, * * * and such contract shall contain the further clause or condition that should any such contractor fail, neglect or refuse to make prompt payment of any claim for labor or services, furnished by any person in connection with such contract as said claim becomes due, whether said services and labor be performed for said contractor, or a subcontractor, then and in such event the proper officer or officers representing the state * * * may pay such claim to the person furnishing such labor or services and charge the amount thereof against funds due or to become due said contractor by reason of his said contract, * * *.''

Because of the provision last quoted that ''should any such contractor fail, neglect or refuse to make prompt payment of any claim for labor or services, furnished by any person in connection with such contract as said claim becomes due, whether said services and labor be performed for said contractor, or a subcontractor, then and in such event the proper officer or officers representing the state * * * may pay such claim to the person furnishing such labor or services'', without mentioning the word ''materials'' in that particular clause of the statute, it is contended that the Commission may pay claims for labor furnished to the contractor but not claims for materials furnished.

■ It will be noted that in the first part of that section, it is provided that the contract shall contain a condition ''that the contractor shall promptly, as due, make payment to all persons supplying to such contractor labor or material for the prosecution of the work'', and that he ''shall not permit any lien or claim to be filed or prosecuted against the state'', while in the last clause of that section the words ''labor or services''· are used. When the statute is read as a whole and the last clause in connection with its context, it seems

obvious to us that the substitution of the word "services" for the word "material" was inadvertently made and that the legislature had no intention to distinguish between a claim for labor and a claim for materials furnished in the prosecution of the work. In the first part of the section, the language is: "said contractor shall not permit any lien or claim to be filed or prosecuted against the state". This refers to a claim for material as much as it does to a claim for labor, and there could be no purpose in the legislature protecting the state from liens for labor and not for materials furnished, nor can there be any reasonable grounds for drawing a distinction between claims for labor performed and for materials furnished. It is as much to the public interest that persons furnishing materials should be protected as those performing labor.

■ Moreover, if the legislature had intended by the last clause in this section to limit the power of the Commission to the payment of claims for labor only and not claims for materials, why was the word "services" used at all? In its broadest sense, the word "services" may mean a service performed in furnishing materials as much as a service performed in furnishing labor. In all the other sections of the statute bearing upon this question, the words "labor or material" and not "labor or services" are used. We conclude, therefore, that the Commission, under this statute, had the same power to withhold payment of this money to the bank until the Hotchkiss claim for materials furnished was paid as it would have had her claim been one for labor and not for materials.

This conclusion is strengthened by section 67-1101, Oregon Code 1930, which provides:

"Hereafter any person or persons, firm or corporation, entering into a formal contract with the state of Oregon, or any municipality, county or school district within said state, for the construction of any building, or the prosecution and completion of any work, or for repairs upon any building or work, shall be required before commencing such work to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts, * * * and any person or persons making application therefor, and furnishing affidavit to the proper officer of such state, county, municipality or school district, under the direction of whom said work is being or has been prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and if the claim is not for labor or material then a statement disclosing the nature of the same, and payment for the same has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor or materials shall have a right of action and shall be authorized to bring suit in the name of the state of Oregon, or any county, municipality or school district within such state, for his or their use and benefit, against said contractor and sureties, and to prosecute the same to final judgment and execution; * * *."

This clearly shows, we think, the intention of the legislature to afford the same protection to persons furnishing materials as to those who perform labor and this, we think, is the only reasonable construction that can be placed upon the statute when all the statutes bearing upon this question are considered and read together.

■ Section 44-111, to which we have already referred, authorizes the Commission to carry out the provisions

of the act, and to make such rules and regulations as it may deem necessary for such purpose, and gives to the Commission supervision over all matters pertaining to the construction of state highways, the letting of contracts and the selection of materials to be used in the construction of such highways. These broad powers, we think, carry with them, as a necessary incident of the exercise of such powers, the authority of the Commission to provide reasonable limitations upon the right of the contractor to assign the moneys earned under his contract, and that, in limiting Johnson's assignment in the manner above stated, the Commission was acting in the exercise of its rightful authority.

We also hold that, under the provisions of the statute to which we have referred, the claim of Laura Hotchkiss, upon which judgment was taken, is prior in right to the claim of the bank.

The decree of the lower court will, therefore, be reversed and the cause will be remanded with directions to apply the moneys on deposit in the court to the payment of the Hotchkiss judgment and to pay over the remainder to the Bank of California.

BEAN, C. J., and ROSSMAN and KELLY, JJ., concur.