Argued October 5, reversed and remanded November 28, 1962

## OREGON WILLAMETTE LUMBER CORPORA-
## TION *v.* LINCOLN COUNTY ET AL

370 P. 2d 422

*McDannell Brown,* Portland, argued the cause and filed briefs for appellant.

*A. R. McMullen,* District Attorney, Newport, and *W. T. Hollen,* Newport, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, LUSK and DENECKE, Justices.

DENECKE, J. (Pro tempore)

The appellant brought this action against the County and two County Commissioners. Appellant sued for the price of materials it had furnished a painting contractor who had contracted with the County to paint the courthouse. Appellant contends that the defendants are liable because the individual defendants failed to require a payment bond from the painting contractor.

ORS 279.542 provides:

"If the contract is one for which a bond is required and the contractor fails to pay for labor or materials * * * and the officers of the public body * * * fail or neglect to require the person entering into the contract to execute the bond:

"* * * * *

"(2) The public body and the officers authorizing the contract shall be jointly liable for the labor and materials used in the prosecution of any work under the contract * * *."

The sole question is: was the contract between the County and the painting contractor one for which a

bond was required by statute? The trial court granted defendants' motion for a nonsuit in the belief that a bond was not required.

The bond, if required, is one in which the contractor and surety thereon agree to pay all persons supplying labor or materials to the contractor.

ORS 279.502 sets forth when a bond is required. It provides:

"(1) 'Contract for which a bond is required' means a contract which calls for the supplying of labor or materials, or both, but does not include a contract where:

"(a) The total contract price is $500 or less; or

"(b) The contract calls only for supplying goods sold by the contractor in the ordinary course of his business, including the delivery of such goods, or services rendered by the contractor in the repair and maintenance of public property."

We conclude (b) of this statute was intended to read: a bond is not required "* * * where * * * the contract calls only for * * * services rendered by the contractor in the repair and maintenance of public property."

The contract stated it was "to paint the Lincoln County Court building." It required that the entire building, except the brick front, be painted. The brick front was to be treated with a water-proofing agent; the roof was to be patched and coated; the aluminum was to be coated; the iron work was to be cleaned and primed. The contract price was $4,800. The completion time was 30 days.

The contract provided that the contractor was to "furnish all necessary machinery, tools, apparatus, equipment, supplies, materials and labor." It required the contractor to "promptly, as due, make payment of

all just debts, dues, demands and obligations incurred in the performance of [the] contract" and to "permit [no] lien or claim to be filed or prosecuted against the County or the County Court." The appellant furnished the contractor paint, cleaning and coating materials and applicating devices. These materials were valued at $1,408. The contractor was paid in full by the County. The appellant was paid nothing.

The contract was for what is ordinarily considered repair and maintenance. The remaining question is: was it a contract only for "services rendered by the contractor"?

The phrase "services rendered" is used no other place in the public contract laws. The usual phrase to describe what is done by those performing public contracts is "supplying labor and materials" or "performing labor" and "supplying materials." "Services" is used in several places in the public contract laws. For example, medical, surgical and hospital care are described as "services."

"Services" is used in ORS 279.314, a part of the public contract laws. As used in that section, "services" was defined in *Bank of Calif. Nat. Ass'n v. Scott,* 159 Or 70, 78 P2d 342 (1938). The statute at that time read as follows:

> "Every contract made with the state * * * shall contain a condition that the contractor shall promptly, as due, make payment to all persons supplying to such contractor labor or material * * * and that said contractor shall not permit any lien or claim to be filed or prosecuted against the state * * * on account of any labor or material furnished * * * and such contract shall contain the further clause or condition that should any such contractor fail, neglect or refuse to make prompt payment of any claim for labor or *services,* fur-

nished by any person * * * then and in such event the proper officer or officers representing the state * * * may pay such claim. * * *" (Emphasis added.)

The court said at pages 76-77, "it seems obvious to us that the substitution of the word 'services' for the word 'material' was inadvertently made and that the legislature had no intention to distinguish between a claim for labor and a claim for materials furnished in the prosecution of the work."

The court went on: "In its broadest sense, the word 'services' may mean a service performed in furnishing materials as much as a service performed in furnishing labor."

In *Meyer v. Livesley,* 56 Or 383, 388, 107 P 476, 108 P 121 (1910), the court defined "services" as used in a private contract:

"Defendants also contend that the contract testified to by McNary is to pay plaintiff for his services, and therefore cannot be extended to include expenditures. But the term 'services' must be interpreted in the light of the request made to 'go ahead and take care of those hops and pick them, cure and bale them, and put them in the warehouse and leave them there,' until the case was decided; and the statement, 'He would be paid for his services,' necessarily refers to the things specified which could not be done by Meyer personally. He rendered no personal service, but it was all done by employes. In *Tracy v. Waters,* 162 Mass. 563 (39 N. E. 190), it is held that, in the assignment of a claim for money due or to become due to the defendant for services under a contract for the erection of a house, 'the meaning of the word "services" is broad enough to include expenditures as well as labor,' and in *Somers v. Keliher,* 115 Mass. 165, it is said:

" 'The statute applies to the compensation for

services; a term which involves more than the mere labor of the person by whom they are rendered, and may include expenditures as well as labor.'"

Webster has many definitions of "service." The most appropriate are: "Performance of labor for the benefit of another"; "Anything supplied for accommodation. Work, especially of supply and repair, done to meet the needs of customers." Webster, New International Dictionary (2d ed 1961).

Webster, supra, also has many definitions for "render." The most appropriate is: "To furnish; contribute; as, to render assistance to one."

Courts in other jurisdictions have differed in determining what was included in the phrase "services rendered." *Nash Engineering Co. v. Marcy Realty Corp.,* 222 Ind 396, 54 NE2d 263 (1944), interpreted "services rendered" as used in the mechanic's lien law. That court said: " 'services rendered' may also be deemed to mean a bill of particulars for material furnished." (54 NE2d at 266) Contrariwise was *Town of Windsor v. Standard Accident Ins. Co.,* 112 Vt 426, 26 A2d 83 (1942). That was a claim against a bond by one who only supplied materials. It was held the claim was not for "services rendered."

Does "by the contractor" in the phrase "services rendered by the contractor" mean services rendered by the contractor, individually, as distinguished from services rendered by persons laboring for or furnishing material to the contractor in performance of the contractor's contract? Appellant so contends.

The public contract statutes usually use the phrase "contractor or subcontractor" to specifically include all for whom labor is performed or materials supplied. In a few places only the word "contractor" is used. This court has held that even though the statute only

said "contractor," it was for the benefit of and included those who performed labor or supplied materials to a subcontractor. *Portland v. New England Casualty Co.,* 78 Or 195, 152 P 253 (1915).

■ The primary rule of statutory construction is to give to the statute the meaning that the legislature intended it to have. Fortunately, in most statutes this intent is clearly manifested by the words used. Unfortunately, that is not true of most statutes reaching the courts for construction. We conclude it is not true of this statute.

When words fail, only less accurate sources remain to guide the search for legislative intent. One such source is legislative history. Here, however, the available legislative history is of no aid.

Therefore, the court is called upon to interpret a statute whose words and history are ambiguous. General policy considerations are all that remain to assist.

■■ We have frequently stated that one purpose of the public contract laws was "to insure the payment of every person who should supply labor or material for the prosecution of any public work." *Fitzgerald v. Neal,* 113 Or 103, 110, 231 P 645 (1924). The purpose of statutes providing that certain public contracts do not require a bond is to eliminate bond premium expense and expedite the awarding of contracts. The two purposes do not conflict when the contract is of a kind in which a bond is unnecessary to protect laborers or materialmen or the contract is too small to warrant the time and expense.

This contract was in excess of the statutory minimum, $500. This materialman, the plaintiff, and the other materialmen or laborers on similar contracts, need protection against an insolvent contractor like the one here involved. Many repair and maintenance

contracts awarded by public bodies require much more material and many more workmen than this painting contract.

We do not believe the legislature intended to deprive suppliers and laborers of the protection of a bond because they happened to be on repair and maintenance work rather than construction or alteration work. The elimination of bond premium expense and the expediting of the awarding of contracts are considerations outweighed by the public interest in securing payment for laborers and materialmen.

This contract was not one "only for * * * services rendered by the contractor." It was not because it required substantial amounts of labor to be performed by laborers and it required substantial amounts of material to be purchased from materialmen.

The judgment of involuntary nonsuit is reversed and the cause remanded.