Argued April 8, affirmed September 24, 1969

DORN, *Respondent, v.* WILMARTH,
*Appellant.*

458 P2d 942

*Paul D. Clayton*, Eugene, argued the cause for appellant. With him on the briefs were Luvaas, Cobb, Richards & Fraser.

*Raymond J. Conboy*, Portland, argued the cause for respondent. With him on the brief were Pozzi, Levin & Wilson.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and LANGTRY,* Justices.

McALLISTER, J.

This is a damage action for injuries sustained by plaintiff when defendant's car crashed through a bedroom wall of plaintiff's home and knocked her out of bed and across the room. The jury found for plaintiff and defendant appeals.

On appeal defendant urges that the court erred in denying his motion for a second physical examination of plaintiff, in submitting to the jury the issue of punitive damages and in giving an abstract instruction.

On a Saturday evening in October, 1965, defendant, a young man who lived with his parents in Corvallis,

---

*·Langtry, J., did not participate in the decision of this case.

went to a hotel lounge where he stayed until about 11:30 p.m., during which period he drank about seven whisky and coke highballs. He then went to a nightclub in Corvallis where he had three more highballs. Defendant testified that he did not remember leaving the nightclub and did not remember crashing into plaintiff's home. In his amended answer, however, defendant admits that at about one o'clock a.m. on Sunday morning, August twenty-fourth, his car went through the wall of plaintiff's home and knocked her from her bed.

Plaintiff complained principally of a hyperextension injury to her neck with some nerve root injury on the left side due to a slipped disc. On August 22, 1967, plaintiff was examined by Dr. Stainsby, a neurosurgeon selected by defendant, who made a detailed report of his examination.

On October 6, 1967, plaintiff was involved in another accident when her car, while stopped at an intersection, was struck from behind by another car. Plaintiff was wearing a cervical collar at the time of this accident. Plaintiff complained of pain in her neck, was taken to the hospital, placed in traction and remained in the hospital about a week.

On October 24 defendant, having learned of the second accident, moved the court to require plaintiff to submit to an additional physical examination by Dr. Stainsby. Defendant's motion was denied on December 4, 1967. When the case came on for trial on January 17, 1968, defendant renewed his motion. The court again denied the motion but gave defendant leave to renew it during the course of the trial.

■■ We think the court did not abuse its discretion in refusing to require plaintiff to submit to a second

physical examination. Plaintiff made no claim that the injuries sustained by her in the first accident were aggravated by the second accident or that her recovery from the first accident's injuries was in any way impaired. Both physicians who testified for plaintiff testified to the same effect. Defendant did not renew his motion after plaintiff and her doctors testified and he did not call Dr. Stainsby as a witness. Defendant did not point out to the trial court and has not pointed out to this court how he was prejudiced in any way by the denial of his motion. The trial courts have inherent power to require physical examinations whenever it appears that "the ends of justice" would be promoted thereby. *Carnine v. Tibbetts,* 158 Or 21, 30, 74 P2d 974 (1937); *Moe v. Alsop,* 189 Or 59, 68, 216 P2d 686 (1950). A motion for a physical examination is addressed to the sound discretion of the trial court, *Carnine v. Tibbetts, Moe v. Alsop,* both supra. In this case we find no abuse of discretion.

The verdict in this case included a separate award of $500 as punitive damages. Defendant assigns as error the denial of his motion to withdraw the claim for punitive damages from the jury because the evidence allegedly did not justify the submission of that issue.

■ This court has long approved the award of punitive damages in appropriate cases to punish the defendant and to thus deter him and all others from like conduct. *Van Lom v. Schneiderman,* 187 Or 89, 107, 210 P2d 461, 11 ALR2d 1195 (1949); *Gill v. Selling,* 125 Or 587, 591, 267 P 812, 58 ALR 1556 (1928). In the early case of *Day v. Holland,* 15 Or 464, 469, 15 P 855 (1887), the court held that punitive damages might be awarded for a tort committed with "a dis-

regard of social obligations." In the recent case of *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 425, 435 P2d 306 (1967), we again emphasized deterrence as the factor justifying punitive damages. We said:

> "* * * It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. * * *"

See, also, *Sumrell v. Household Finance Corp.*, 250 Or 381, 443 P2d 179, 180 (1968), and *Douglas v. Humble Oil & Refining Company*, 251 Or 310, 445 P2d 590, 592 (1968).

Although this court has used a variety of terms to describe conduct justifying punitive damages it has consistently held that such damages are proper to deter wanton misconduct. In *Day v. Holland*, supra, the court said:

> "* * * [W]here a tort is committed with a bad motive, or so recklessly as to imply a disregard of social obligations, and generally when the defendant appears to have done the act wantonly, maliciously, or wickedly, the jury may, in their discretion, give exemplary damages. * * *" 15 Or at 469.

The above statement has been quoted in several later cases and in many other cases conduct warranting punitive damages has been described as wanton. See *Hall v. Work*, 223 Or 347, 363, 354 P2d 837, 366 P2d 533 (1960); *Fisher v. Carlin et ux*, 219 Or 159, 162, 346 P2d 641 (1959); *Perry v. Thomas et al*, 197 Or 374, 393, 253 P2d 299 (1953); *Jaco v. Baker*, 174 Or 191, 204, 148 P2d 938 (1944); *Johnson v. Oregon Stevedoring Co., Inc.*, 128 Or 121, 139, 270 P 772 (1928); *Gill v.*

*Selling*, supra; *Kingsley v. United Rys. Co.*, 66 Or 50, 58, 133 P 785 (1913); *Hamerlynck v. Banfield*, 36 Or 436, 443, 59 P 712 (1900).

The rule followed by this court that wanton misconduct will justify an award of punitive damages is supported by other authorities: McCormick on Damages 280, § 79; Prosser on Torts (3d ed) 9, § 2; 4 Restatement, Torts, § 908; 17-18 Huddy, Cyclopedia of Automobile Law (9th ed), § 271; 22 Am Jur 2d, Damages § 244.

Wantonness has been generally equated with recklessness, as defined in 2 Restatement, Torts 1293, § 500, as follows:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

Prosser treats wantonness and recklessness as synonymous in the following statement:

"* * * 'Wantonness,' or 'recklessness,' * * * means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. * * *" Prosser on Torts (2d ed) 151.

In our cases wantonness and recklessness have frequently been coupled together or been used interchangeably. See, e.g., *Douglas v. Humble Oil Co.*,

supra; *Fisher v. Carlin,* supra, *Perry v. Thomas,* supra.

There is ample evidence in this case to support a finding that defendant's conduct was wanton. He admitted that he had drunk ten whisky highballs. He testified that his last recollection was of sitting at the bar talking to the owner of the nightclub and that he did not remember leaving the bar. Defendant offered no explanation for his loss of memory and the jury could infer that it was due to his consumption of alcohol.

■ We think the conduct of one who drives a car after voluntarily drinking to excess is best classified as wanton or reckless. Similar conduct was held to support a finding of wantonness in *Falls v. Mortensen,* 207 Or 130, 295 P2d 182 (1956). The question in that case was whether contributory negligence is a defense to wanton misconduct—the award of punitive damages was not challenged.

Other cases holding that punitive damages are recoverable for harm caused by driving while intoxicated include *Miller v. Blanton,* 213 Ark 246, 210 SW2d 293, 3 ALR2d 203 (1948); *Ross v. Clark,* 35 Ariz 60, 274 P 639 (1929); *Infeld v. Sullivan,* 151 Conn 506, 199 A2d 693, 694 (1964); *Sebastian v. Wood,* 246 Iowa 94, 66 NW2d 841 (1954); *Southland Broadcasting Co. v. Tracy,* 210 Miss 836, 50 S2d 572, 576 (1951).

Driving a vehicle while under the influence of intoxicating liquor is a crime punishable by imprisonment in jail "for not more than one year, or by fine of not more than $1,000, or both." ORS 483.992 (2). We hold that an award of punitive damages is proper as a deterrent to the conduct proscribed by the above

statute. The trial court properly submitted the issue of punitive damages to the jury.

■ Plaintiff also complains of the giving of an instruction that was in part abstract when the court mentioned the concurrent negligence of two or more people. Although concurrent negligence was not involved in this case the error was inconsequential and harmless.

There is no merit in the other assignments of error.

The judgment is affirmed.