Argued June 11, reargued September 8, 1976, affirmed February 17,
petition for rehearing denied March 15, 1977

ROSHAK, *Respondent,*
*v.*
LEATHERS et al, *Appellants.*
(No. 408-094, SC 24266)
560 P2d 275

Richard S. Mannis, Portland, argued the cause and filed briefs for appellants.

Wendell Gronso, Burns, argued the cause and filed briefs for respondent.

Before Denecke, Chief Justice, and O'Connell,* Holman, Tongue, Howell, Bryson, and Lent, Justices.

LENT, J.

*Term expired 1/3/77.

## LENT, J.

Plaintiff brought an action for damages against defendants, a father and son, for personal injuries claimed to have been caused by an assault and battery committed by them. Defendants appeal from a judgment for plaintiff, based upon a jury verdict, of $11,250 general damages, $2,292.80 special damages, $11,500 punitive damages against the father, and $8,500 punitive damages against the son.

Plaintiff, a state policeman, stopped defendants as they were towing on the highway a fully loaded, disabled gasoline truck and trailer with another loaded truck. A physical conflict ensued in which plaintiff claims to have been severely beaten. Defendants were criminally charged with attempted murder and were convicted of the crime of assault in the third degree. *See* ORS 136.465 and ORS 163.165. Each was sentenced to pay a fine of $1,000 and to serve 60 days in the county jail; however, the court ordered that the jail term be served on weekends. Plaintiff then brought this action for damages.

■ Defendants first assign as error the trial court's failure to admit the following testimony of the senior Leathers which was the subject of an offer of proof:

"Q. How long were you in the jail?

"A. Umm, I was in there, I think, 30 minutes to an hour. I can't remember exactly. A few things happened.

"Q. Then what happened at that time?

"A. Well, I had a kind of heart seizure and couldn't breathe, and the ambulance came and got me and took me to the hospital.

"Q. Did you go to the hospital by ambulance?

"A. Yes.

"Q. How long were you in the hospital then?

"A. Two days.

"Q. And then from there where did you go?

"A. Back home. They came and got me and took me home."

Defendants contend that because plaintiff introduced

evidence that neither defendant had any sign of physical injuries after the fight, the evidence set forth above was admissible to show that the senior Leathers had received injury, thus rebutting the inference that the assault on plaintiff was unnecessary and maliciously motivated. They also contend that the evidence was admissible to rebut the inference that plaintiff was helpless against unencumbered and unrestrained assailants. Since the heart attack did not occur until after the incident and defendants were not shown to have had any prior knowledge of the senior Leathers' condition, its occurrence could not justify defendants' use of force against plaintiff. There was no basis for inferring that any disability existed at the time of the incident or that a man with a known heart condition would have restrained himself and would not have voluntarily engaged in an affray or that he needed any special protection by his son.

■   Defendants also contend the trial court erred in estopping them from litigating their affirmative defenses of (1) self-defense; (2) defense of property; and (3) the use of "only that force necessary to protect the traveling public from injury and damage arising from an obstacle in the roadway which plaintiff was attempting to prevent them from removing." Even assuming that (2) and (3) adequately state defenses, there was no evidence sufficient to justify their submission to the jury. As to (1), the defense of self-defense was shown to have been unsuccessfully litigated by defendants under adequate instructions in the criminal case, and defendants were therefore collaterally estopped from asserting it again. *Casey v. N. W. Security Ins. Co.,* 260 Or 485, 491 P2d 208 (1971). Defendants argue that because the issue of malice, for which plaintiff seeks punitive damages, was unnecessary to the prior criminal case, defendants should be entitled to relitigate the issue of self-defense. The logic of this argument escapes us.

■   Defendants also contend that the issue of punitive damages should not have been submitted to the jury

because of the criminal sanctions already imposed. We reject this contention:

(1) The grounds advanced both by the defendants and in the dissenting opinion are insufficient to convince us of the necessity or desirability of changing our present law in this respect.

(2) This is not a proper case in which to consider such a change in our law.

*The reasons advanced for the change in our law are not convincing of the need for the change.*

For many years it has been recognized in this state that "[t]he generally accepted doctrine [of punitive damages] is that such damages are awarded by way of punishment to the offender and as a warning to others, or, according to some authorities, by way of example." *Martin v. Cambas,* 134 Or 257, 261, 293 P 601 (1930). The rule was more fully recognized in *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306, 27 ALR3d 1268 (1967):

> "Punitive damages can only be justified on the theory of determent. See Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175 (1965). It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. * * *."

This purpose is identical to one purpose of criminal sanctions. See ORS 161.025, which enumerates the purposes sought to be accomplished by Oregon's Criminal Code. ORS 161.025(1) provides as follows:

> "(1) The general purposes of chapter 743, Oregon Laws 1971, are:
>
> "(a) To ensure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the correction and rehabilitation of those convicted, and their confinement when required in the interests of public protection.
>
> "(b) To forbid and prevent conduct that unjustifiably

and inexcusably inflicts or threatens substantial harm to individual or public interests.

"(c) To give fair warning of the nature of the conduct declared to constitute an offense and of the sentences authorized upon conviction.

"(d) To define the act or omission and the accompanying mental state that constitute each offense and limit the condemnation of conduct as criminal when it is without fault.

"(e) To differentiate on reasonable grounds between serious and minor offenses.

"(f) To prescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders.

"(g) To safeguard offenders against excessive, disproportionate or arbitrary punishment."

It is urged upon us that the purpose of punitive damages is identical to that of paragraph (a), *supra,* and that it is unreasonable to permit punishment for the same act in two successive court proceedings where, in each instance, the purpose of the punishment is determent of defendant and others from like action.

There is no doubt that in the vast majority of jurisdictions in the United States the rule is that an action for punitive damages is not affected by previous criminal sanctions. Annotation, Punitive or Exemplary Damages for Assault, 16 ALR 771, 798-801 (1922), supplemented in 123 ALR 1115, 1122 (1939); McCormick, Damages § 82 (1935); Prosser, Torts § 2 (4th ed 1971). In a few states punitive damages are never allowed, so the question does not arise. Of the states that do authorize the recovery of punitive damages, only a small minority, including Indiana and Nebraska, prohibit punitive damages where a tort is also a crime. *See* Aldridge, *The Indiana Doctrine of Exemplary Damages and Double Jeopardy,* 20 Ind L J 123 (1945).

There are Oregon cases which follow the majority

rule with little or no discussion of it. In *Stark v. Epler,* 59 Or 262, 117 P 276 (1911), this court upheld an award of punitive damages for an assault and battery for which the defendants had been criminally prosecuted. The result of that prosecution is not mentioned in the opinion and apparently was not considered in mitigation or preclusion of the award. A more recent case indicating that punitive damages may be awarded for assault and battery, but not discussing the relevance of possible criminal sanctions, is *Linkhart v. Savely,* 190 Or 484, 227 P2d 187 (1951). In *Harrell v. Ames,* 265 Or 183, 189-90, 508 P2d 211, 65 ALR3d 649 (1973), it was contended that an award for punitive damages against a drunken driver was not proper when a criminal penalty was available. The court replied that this contention had already been rejected in *Dorn v. Wilmarth,* 254 Or 236, 242-43, 458 P2d 942 (1969), in which it held that punitive damages were proper to deter the crime of driving under the influence, although that case did not discuss the relationship between the criminal and civil sanctions.

We are told that it is "unreasonable" to allow double punishment for an act which would subject a defendant to both criminal and civil sanctions. We see nothing unreasonable about it. While there may be some judicial antagonism toward the proliferation of requests for punitive damages in certain civil cases, we do not think it reasonable to eliminate punitive damages merely because of a prior criminal conviction.

We are unable to understand why the additional determent of punitive damages is considered unreasonable. Not only the criminal justice system but every law-abiding citizen is concerned with the increasing crime rate. If we are concerned with the types of acts which may subject a defendant to a criminal charge and civil liability such as violent crimes against the person, as in this case, we see nothing wrong with the additional determent of the allowance of punitive damages.

During our consideration of this case it has been argued to us that because of the enactment of ORS 161.025(1), although the legislature may not have had the particular culprit in mind when it set the range of penalties for crimes, it did set minimum and maximum standards which the legislature believed to be sufficient to deter in the gamut of cases. We reject this line of reasoning.

The concept of deterrence is not new to the criminal law, either in this state or generally. *See Williams v. New York,* 337 US 241, 69 S Ct 1079, 93 L Ed 1337, *reh denied* 337 US 961, 69 S Ct 1529, 93 L Ed 1760, *reh denied* 338 US 841, 70 S Ct 34, 94 L Ed 514 (1949); 24B CJS 537, Criminal Law § 1974 and cases cited therein; *State v. Patzer,* 8 Or App 491, 493 P2d 1389, Sup Ct *review denied* (1972); *cf., State of Oregon v. Wojahn,* 204 Or 84, 282 P2d 675 (1955). In *State v. Patzer, supra,* the defendant contended that it was improper for the trial judge to consider the deterrent effect on others in determining the sentence to be imposed upon him. He reasoned that deterrence is more like vindictive justice than a means to reformation. *See* Art I, § 16, Oregon Constitution. While also directing attention to the new code, Chief Judge Schwab answered that the "[d]eterrent effect on others has long been a relevant consideration in imposing sentence * * *." 8 Or App at 492.

We must assume the position of the proverbial ostrich to believe that the "gamut" of sanctions provided by the criminal code of this state deters crime. In almost any community in this state, the local newspaper one week carries reports of sentences meted out to convicted criminals. The same newspaper in the following week informs us how much determent has occurred by reporting occurrences of the same crimes by those who learned their lesson from what happened to others (or even to themselves at an earlier time) as a result of violation of our criminal code. In these circumstances we do not believe it reasonable to remove from our law whatever additional deterrent

effect is provided through the imposition of punitive damages.

It is argued to us that by fixing minimum and maximum standards of punishment for certain criminal acts the legislature must have intended that there not be further civil punishment. As can be seen from examination of ORS 161.025(1), the legislature sought to draw attention to the general purposes for the enactment of a comprehensive scheme for dealing with conduct to be outlawed in this state. That the legislature did not intend by implication to incite this court to change common law rules concerning damages appears from ORS 161.045(3):

> "Chapter 743, Oregon Laws 1971, does not bar, suspend or otherwise affect any right or liability to damages, penalty, forfeiture or other remedy authorized by law to be recovered or enforced in a civil action, regardless of whether the conduct involved in the proceeding constitutes an offense defined in chapter 743, Oregon Laws 1971."

It appears to us a reasonable inference that by enacting this subsection the legislature considered the existing law of this state, allowing punitive damages in addition to the imposition of criminal sanctions, in fixing the minimum and maximum standards to deter in the gamut of cases. In other words, we are entitled to assume that the legislature was well aware that sanctions provided by the criminal law were often supplemented by punitive damages where the totality of circumstances made such action appropriate. Conceding, as we do, that punitive damages in this kind of case were created by the courts and that this court, therefore, has the power to forbid them, we can find nothing to indicate that the legislature desired such a result. To eliminate punitive damages in this case would have the effect of reducing the maximum punishment which the legislature knew to be applicable to certain proscribed conduct. We believe it is logical to expect that lack of incentive to obey the law will flow from destruction or diminishment of a

deterrent factor; namely, the imposition of punitive damages in a civil case subsequent to the imposition of criminal sanctions.

It is argued to us that the situation in which punitive damages are assessed against the offender who has already been punished under the criminal law is unique. Certainly, this is not so with respect to legislative treatment of this situation. For example, in federal anti-trust cases, criminal sanctions, 15 USC §§ 1 - 3 (1970), may be followed by an award of triple damages in a subsequent civil action, 15 USC § 15 (1970). Also, *see* Oregon's Unlawful Trade Practices Act, providing for both criminal sanctions and punitive damages. ORS 646.990 and 646.638.

We believe there is merit to plaintiff's argument that it is in the cases of more aggravated wrongful conduct that criminal prosecution is apt to occur and to adopt the change which defendants urge will tend to shield those malefactors to a greater extent than those who may have to respond in punitive damages because their conduct was not so blatantly wrongful as to invite the attention of the criminal justice system.

We do not believe the change for which defendants ask to be either just or reasonable. We believe that such a change would eliminate a factor which gives some aid in the determent of anti-social conduct.

*This is not a proper case in which to consider such a change in our law.*

We have adopted rules of procedure with respect to appeals. Rule 6.18 of those rules provides in part:

> "In appeals in actions at law, no alleged error of the trial court will be considered on appeal unless regularly assigned as error in the appellant's (or cross-appellant's) opening brief, except that the appellate court may take notice of errors of law apparent on the face of the record.
>
> "Each assignment of error shall be clearly and succinctly stated under a separate and appropriate heading. The assignment of error must be specific and must set out verbatim the pertinent portions of the

record. Assignments of error which the court can consider only by searching the record for the proceedings complained of will not be considered.

"The arrangement and wording of assignments of error so far as applicable, together with reference to page of the transcript or narrative statement, shall conform to illustrations in Appendix D.

"* * * * *."

The assignment of error set forth in defendants' brief in this case makes no pretense of complying with this rule. Following is defendants' assignment of error:

"The court erred in submitting punitive damages to the jury for their consideration although the Defendants had been convicted criminally and punished and fined by the state."

This "arrangement and wording" does not comply with any of the illustrations set forth in Appendix D. Neither defendants' brief and abstract of record nor their reply brief gives us any clue whatsoever as to where in the record we may find the "proceedings complained of." For the first time, when defendants were asked to submit a supplemental brief on the issue of the propriety of awarding punitive damages, they advised this court that they were complaining of the trial court's denial of a motion:

"Defendant's [sic] motion to strike the allegations and prayer relating to punitive damages was denied by the trial court. (TR 256)."

Even here there was no attempt to comply with Rule 6.18 and Appendix D by setting out their motion verbatim.

Up to the time of filing the supplemental brief, which occurred after the case had once been orally argued before this court, there was no way for this court to locate the trial judge's alleged error except to search the record. We submit that to reward these defendants in spite of their blatant disregard of our rules by adopting a radical departure from the existing common law of this state so as to relieve them from the obligation to respond in damages in accordance with

the jury verdict is improper and unfair to those who take the trouble to comply with our rules. This court has not hesitated in the past to enforce Rule 6.18. *See, for example, McPherson v. Cochran,* 243 Or 399, 414 P2d 321 (1966), and *Quillin v. Peloquin,* 237 Or 343, 391 P2d 603 (1964).

One of the purposes of Rule 6.18 is to facilitate the work of this court and to aid us in keeping current in the face of an ever-growing caseload. *See Shields v. Campbell,* 277 Or 71, 559 P2d 1275 (1977); *Castor v. Erlandson,* 277 Or 147, 560 P2d 318 (1977). Each time we reward a party who disregards the rule, we discourage the bar from taking the trouble to learn and follow the rules of this court. We breed contempt for those rules. What is worse, when we fail to enforce this rule in some cases while refusing to consider alleged error below in other cases for failure to follow the rule, we give to the observer an appearance of unequal treatment of the parties who appear in this court. It smacks of justice by whim.

Incidentally, defendants also disregarded Rule 6.18 in connection with their other two assignments of error. Ample justification exists for affirming the entire case for the failure of defendants to follow Rule 6.18 with respect to any of the three assignments of error asserted in this case. We have chosen, however, to dispose of all assignments on their merits.

Affirmed.

**HOLMAN, J.,** dissenting.

I disagree with that part of the majority opinion which holds it is proper to allow a civil jury to award punitive damages as punishment and as a warning to others after a criminal proceeding has already imposed sanctions by way of incarceration and fine for the identical purposes. Punitive damages, we have said, are "awarded by way of punishment to the offender and as a warning to others," *Martin v. Cambas,* 134 Or 257, 261, 293 P 601 (1930), and they

"can only be justified on the theory of determent," *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306, 27 ALR3d 1268 (1967). In order to see that the purposes of punitive damages are identical with those for the imposition of criminal punishment, we have only to consult ORS 161.025, which enumerates the purposes sought to be accomplished by the chapter on crimes and punishments. This section states, in part:

"(1) The general purposes of chapter 743, Oregon Laws 1971, are:

"(a) To ensure the public safety by *preventing the commission of offenses through the deterrent influence of the sentences authorized,* the correction and rehabilitation of those convicted, and their confinement when required in the interests of public protection.

"(b) *To* forbid and *prevent conduct* that unjustifiably and inexcusably inflicts or threatens substantial harm to individual or public interests.

"(c) *To give fair warning* of the nature of the conduct declared to constitute an offense and of the sentences authorized upon conviction.

"* * * * *." (Emphasis added.)

The majority's essential failure is to explain by what logic the law should provide for two *successful* proceedings to punish a wrongdoer—something the common law does in no other context. The writer of this dissent has enough difficulty explaining why the law should provide two proceedings, one criminal and the other civil, to accomplish the same purpose, let alone explain why there should be two successive *successful* proceedings.

The clear thrust of the majority opinion is that the imposition of the penalties provided by the criminal law are inadequate to deter. The majority says,

"During our consideration of this case it has been argued to us that because of the enactment of ORS 161.025(1), although the legislature may not have had the particular culprit in mind when it set the range of penalties for crimes, it did set minimum and maximum standards which the legislature believed to be sufficient

to deter in the gamut of cases. We reject this line of reasoning."

This rejection is made directly in the face of the following declarations in ORS 161.025 which state the legislature's further purposes:

"(e) *To differentiate on reasonable grounds between serious and minor offenses.*

"(f) *To prescribe penalties which are proportionate to the seriousness of offenses* and which permit recognition of differences in rehabilitation possibilities among individual offenders.

"(g) *To safeguard offenders against excessive, disproportionate or arbitrary punishment.*" (Emphasis added.)

By what process the majority arbitrarily rejects the legislature's stated purposes is not apparent.

In addition, the majority contends that, in setting maximum sentencing standards, the legislature anticipated the availability of punitive damages as an additional sanction. There is, of course, no evidence to support this contention; and, indeed, the portions of ORS 161.025 set forth above support the opposite contention. The position of the majority seems to be that the legislature set *maximum* sentences which it nevertheless believed were inadequate to carry out its purpose of determent. This is a very peculiar way to read a statute—to conclude that the legislature intentionally failed to achieve its stated purpose. Without sensing any inconsistency, the majority then turns around and argues that there is nothing unique about allowing punitive damages after criminal sanctions have been exacted because in one instance Oregon's legislature has explicitly so provided.

The majority uses the argument that only the more serious conduct is prosecuted criminally and that this dissent's proposal would leave those guilty of less serious offenses subject to punitive damages while those guilty of more serious conduct would not be. This argument is only as good as the majority's asumption that those guilty of serious conduct will not go to jail or be otherwise adequately punished for the seriousness

of their offenses by the criminal justice system whose purpose is adequate punishment and determent—an assumption for which I claim there is no basis.

It is argued that in cases of this kind it was not the intention of the legislature to preclude the civil courts from allowing punitive damages because ORS 161.045(3) states that the Oregon Criminal Code of 1971 does not affect any right or liability to damages or penalty authorized by law in a civil action. However, the courts, not the legislature, created punitive damages for cases like this one, and the above statute does not address the problem of whether it is sensible for the common law to allow punitive damages in situations in which sanctions have already been applied by a criminal court. The statute says only that the legislature will not interfere if civil courts think that punitive damages are proper under the circumstances. The question of their propriety is the one under consideration here, given the facts of prior criminal punishment and the stated legislative purposes in providing for criminal sanctions.

In summation, the majority opinion amounts to a holding that persons sentenced for crimes should be punished a second time by the circuit courts despite the intention of the legislature that the penalties it was prescribing be "proportionate to the seriousness of offenses," that they "[prevent] the commission of offenses through [their] deterrent influence," that they "safeguard offenders against excessive disproportionate or arbitrary punishment," and that they "give fair warning." In the face of these legislative statements, the majority says that "[w]e must assume the position of the proverbial ostrich to believe that the 'gamut' of sanctions provided by the criminal code of this state deters crime." The majority then moves into the business of assessing penalties for crime where the legislative penalty has already been exacted for the same purpose and for the same conduct. I lack the omniscience of the majority which causes it to con-

[ 221 ]

clude that insufficiency of legislative penalties is the cause of the increase in crime.

Finally, the majority finds it necessary to bolster its legal position by finding that defendants have failed to comply with our rules and are therefore in no position to assert their legal position. Rule 6.18 of our appellate Rules of Procedure is normally applied only when the court is actually inconvenienced by a party's failure to comply. This is not such a case.

DENECKE, C. J., joins in this dissent.