Argued and submitted May 16, 1984, affirmed January 9, 1985

PFEIFER,
*Respondent - Cross-Appellant,*

*v.*

COPPERSTONE RESTAURANT AND
LOUNGE, INC. et al,
*Appellants - Cross-Respondents.*

*and*

BAKER,
*Cross-Respondent.*

(82-0072C; CA A27549)

693 P2d 644

Jacob Tanzer, Portland, argued the cause for appellants - cross-respondents. With him on the briefs was Griffith, Bittner, Abbott & Roberts, Portland.

David G. Frost, Hillsboro, argued the cause and filed the brief for respondents - cross-appellants.

No appearance for cross-respondent Baker.

Before Buttler, Presiding Judge, and Warren and Young, Judges.

WARREN, J.

### WARREN, J.

This is an action for wrongful death of a 12-year-old boy brought by the personal representative of decedent's estate against a tavern, a bartender and the driver of an auto which went through a red light, striking the car in which decedent was a passenger. The primary issue is whether the jury verdict awarding punitive damages of $100,000 against the tavern and $10,000 against the bartender was proper.[1] Defendants do not deny liability for plaintiff's death and have already paid the jury verdict for compensatory damages, costs and disbursements. We affirm the judgment for punitive damages.

At 1:30 or 2:00 a.m. on September 19, 1981, defendant driver, a 21-year-old man, began drinking at a tavern with a friend. The two split a couple of pitchers of beer and shot pool. At closing time, they carried out approximately a case and one-half (36 bottles) of beer and went to another friend's house. There were eight to ten people there, all sharing the beer, including a case which was in the refrigerator when defendant driver arrived. He and his friend left at approximately 5:00 a.m. to go home, after most of the beer had been consumed by the group. At home, they had one or two mixed drinks composed half of Coca-Cola and half of a liquor known as R&R. At 7:00 a.m., they left to take the friend home.

The two stopped on the way at defendant tavern, which opened at 7:00 a.m. The driver had a bottle of beer, a tequila and a bourbon. He drank the beer at about 7:15 a.m., the tequila at about 7:30 a.m. and the bourbon at about 7:45 a.m. The driver admitted that he was "pretty well intoxicated" when he arrived and became drunker while there. He was described variously by the patrons, but there was testimony that he was visibly intoxicated and staggered. The Multnomah County Medical Examiner, calculating back from a later measurement of the driver's blood alcohol content, hypothesized that he had a .21 percent blood alcohol content when he arrived at defendant tavern at 7:00 a.m. and a .29 percent when he left at 8:30 a.m.[2] He testified that a person

---

[1] The driver does not appeal.

[2] As a point of reference, ORS 487.540(1) provides, in pertinent part:

"A person commits the offense of driving while under the influence of

with .20 to .25 percent blood alcohol content would be visibly intoxicated in that he would have impaired walking and talking.

At 8:32 a.m., the driver went through a red light and struck an automobile, killing plaintiff's decedent. According to the police investigating the accident, the driver was "very intoxicated" at the scene of the accident. He was taken to the hospital, still intoxicated, where his blood alcohol content was measured at .24 percent at 11:01 a.m. and .22 percent at 12:01 p.m.

Only the tavern and the bartender are appellants. The principal allegation of the complaint against these defendants is that the bartender, as an agent and employe of the tavern, served intoxicating liquor to the driver after he was in a "visibly intoxicated condition," when the bartender knew or should have known that he would operate a motor vehicle on leaving the premises. *See* ORS 30.950. In this appeal, these defendants claim that the trial court erred in allowing the jury to award punitive damages, because (1) punitive damages are not available as a matter of law in this action;[3] and, in the alternative, (2) the driver's condition was not sufficient to establish wanton misconduct in serving him and justify punitive damages.

Defendants initially claim that the legislature intended to preclude an award of punitive damages against a tavern owner by the language of ORS 30.950, which states:

"No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated."

They assert that the language "damages incurred or caused by

intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 487.805 to 487.835 * * *."

[3] Defendants made these claims in motions for partial summary judgment against punitive damages, to strike plaintiff's claim for punitive damages and for a directed verdict on the issue of punitive damages. The trial judge denied all of the motions, finding that there was sufficient evidence on which the jury could award punitive damages.

intoxicated patrons" can be read to mean only compensatory damages. Punitive damages, defendants argue, are not damages "incurred or caused by" an intoxicated person, because they are not money substitutes for injuries "incurred or caused" but are a liability imposed on a defendant as punishment for his conduct.

In *Sager v. McClenden,* 296 Or 33, 672 P2d 697 (1983), the Supreme Court interpreted this same statutory language in order to decide whether ORS 30.950 authorizes a claim by an intoxicated person against a liquor licensee for off-premises injuries sustained by the intoxicated person who was served alcohol while visibly intoxicated. The court explained:

> "In *Denton v. International Health & Life,* 270 Or 444, 452, 528 P2d 546 (1974), we noted that the word 'incur' has two meanings. It may mean 'to become liable or subject to,' citing *Earle v. Holman,* 154 Or 578, 611-12, 55 P2d 1097, 61 P2d 1242 (1936), or it may mean 'to cause, bring on, or occasion,' citing *American Indemnity Co. v. Olesijuk,* 353 SW2d 71 (Tex Civ App 1962). Applying those two meanings to ORS 30.950, we find that 'damages incurred' could have at least two interpretations. It could mean, as the Court of Appeals found, injuries sustained by intoxicated persons, or it could mean *damages for which intoxicated persons might be liable.* This latter need not, in all cases, mean the same as 'damages caused by intoxicated patrons.'" (Emphasis supplied; footnote omitted.) 296 Or at 37.

In a footnote to this passage, the court used the example of punitive damages, noting that punitive damages are legally incurred but are different from compensatory damages actually caused. 296 Or at 37 n 1. The court went on to conclude that, in light of the legislative intent, "damages incurred" does not mean liability for injuries sustained by an intoxicated person. We are left then with the clear inference that "damages incurred" means "damages for which intoxicated persons might be liable." 296 Or at 37.

Under this construction, the statute does not address the issue of punitive damages for which the tavern owner may be liable. One might argue that it implies that a tavern owner may be liable for punitive damages assessed against the intoxicated driver. Although that issue is not before us, we believe that public policy would require a different result. The

deterrence and punishment function of punitive damages are not served by requiring one defendant to pay a punitive damage award assessed severally against another. *Rose (Betty) v. Whitbeck,* 278 Or 463, 468, 564 P2d 671 (1977); *but see Harrell v. Travelers Indemnity Co.,* 279 Or 199, 205, 567 P2d 1013 (1977) (contract of insurance providing for indemnity for grossly negligent or reckless conduct not void as against public policy). It follows from *Sager,* where the court held that an intoxicated patron cannot recover against a tavern owner for his or her own injuries, that an intoxicated person is not entitled to pass along independent liability for punitive damages to the tavern owner.

■ ■ ORS 30.950 codified the Oregon Supreme Court's holding in *Campbell v. Carpenter,* 279 Or 237, 243-44, 566 P2d 893 (1977), that a tavern keeper can be held liable in a common law negligence action

> "to third parties who are injured in an automobile accident that results from serving a visibly intoxicated customer because it is reasonably foreseeable that when the customer leaves the premises, he or she will drive an automobile." *Sager v. McClenden, supra,* 296 Or at 38-39.

The statute did not create a new cause of action. It was intended to limit only the *kinds of conduct* for which liability may be imposed on a tavern owner and it evidences no intent to limit the *type of damages* available after *Campbell.*[4] Although *Campbell* did not consider a tavern owner's liability for punitive damages, we have no reason to assume that the court, in according recognition to a common law cause of action, intended damages to be different from those generally available in common law negligence actions. These include punitive damages when acts by a defendant amounting to wanton misconduct are alleged and proven. *See, e.g., Roshak v. Leathers,* 277 Or 207, 211, 560 P2d 275 (1977); *Dorn v. Wilmarth,* 254 Or 236, 458 P2d 942 (1969); *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306 (1967); Although doubt remains as to what the language "damages

---

[4] The original draft of HB 3152, which became ORS 30.950, provided that licensees would not be liable unless they were grossly negligent in serving visibly intoxicated patrons. The gross negligence standard was deleted from the bill in committee, and the final version codified the holding in *Campbell. Sager v. McClenden, supra,* 296 Or at 38.

incurred or caused by an intoxicated patron" in ORS 30.950 means, it cannot be said expressly to exclude an award of punitive damages against a tavern owner where that right existed under the common law. The statute entirely does not address the issue.

■ In addition, defendants claim that ORS 471.322,[5] which provides that monetary penalties may be imposed by the OLCC in addition to or in lieu of license or permit suspension for serving visibly intoxicated patrons, precludes an award of punitive damages in a negligence action brought under ORS 30.950. We do not agree. Before 1969, the only remedy OLCC had to punish a licensee who served a visibly intoxicated person in violation of ORS 471.410(1)[6] was a license suspension or cancellation under ORS 471.315(1)(a). In 1969, the legislature enacted ORS 471.322 to give the commission discretion to accept from an affected licensee the payment of a penalty in lieu of license suspension. Or Laws 1969, ch 67, §§ 2, 3. The penalty was to be fixed by the commission at not less than $100 or more than $2,000, and the suspension would be cancelled on acceptance of payment by the commission. The statute only gave OLCC the discretion to accept a money payment as a substitute for a license suspension. Nothing in ORS 471.322 indicated that the monetary penalty was intended to be an exclusive punishment for licensees found to have violated ORS 471.410(1) by serving a visibly intoxicated person, or in any way to affect the rights of

---

[5] ORS 471.322(1) and (2) provide for penalties as follows:

"(1) If a license issued under ORS 471.220, 471.223, 471.250, 471.260, 471.265, 471.275, 471.285 or 471.287, or a service permit issued under ORS 471.360, is suspended for a period of 30 days or less, the commission may impose against the affected licensee or permittee in lieu of or in addition to the suspension a monetary penalty fixed by the commission in accordance with subsection (2) of this section if the commission is satisfied that such a penalty in lieu of or in addition to suspension is consistent with the purposes of the Liquor Control Act. Upon payment of the penalty in lieu of suspension, the commission shall cancel the suspension.

"(2) The penalty which the commission may impose pursuant to subsection (1) of this section against a licensee shall not be less than $100 nor more than $2,000. The penalty which the commission may impose pursuant to subsection (1) of this section against a service permittee shall not be less than $25 nor more than $500."

[6] ORS 471.410(1) provides:

"No person shall sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated."

persons injured as a result of the licensee's wrongdoing.

 In 1977, the Supreme Court recognized a common law negligence action in *Campbell v. Carpenter, supra,* without mentioning the OLCC penalty scheme. In 1981, the legislature amended ORS 471.322 to allow the commission to impose both license suspension and a fine on licensees and service permittees found to have violated ORS 471.410(1) by serving a visibly intoxicated patron. Or Laws 1981, ch 599, § 2. We are entitled to assume that the legislature was aware of the common law negligence action recognized three years earlier. In the absence of any intention to negate, either expressly or by necessary implication, the preexisting common law remedy, this additional penalty must be regarded as cumulative rather than exclusive. *See Brown v. Transcon Lines,* 284 Or 597, 610, 588 P2d 1087 (1978). ORS 471.322, as amended, expresses no intention to affect preexisting common law remedies, and the discretion allowed the OLCC to impose a fine of not less than $100 or more than $2,000 cannot be said necessarily to imply an intent to provide an *exclusive* means of deterring conduct which may result in serious personal and property injury, as well as death to innocent motorists and passengers. Although the adequacy of the penalty claimed to be an exclusive deterrent is not dispositive, it is one indication of legislative intent. *See Holien v. Sears, Roebuck and Co.,* 66 Or App 911, 917, 677 P2d 704, *affirmed* 298 Or 76, 97, 689 P2d 1292 (1984).

We recognize that the sole purpose of a punitive damage award is to deter and punish certain behavior, but we do not infer from the mere existence of civil penalties paid to the state under ORS 471.322(1) and (2), that the legislature intended to take away the right previously afforded by the common law to recover punitive damages in an appropriate case for the same conduct. Neither do we infer from *Farris v. U.S. Fid. and Guar. Co.,* 284 Or 453, 587 P2d 1015 (1978), and *Brewer v. Erwin,* 287 Or 435, 600 P2d 398 (1979), that the penalties of ORS 471.322(1) and (2) are exclusive. In *Farris,* the Supreme Court held that ORS 731.988 precludes an award of punitive damages in an action against an insurer for denial of coverage. The court reasoned that the insurer's bad faith refusal to defend its insured under a liability policy gave rise only to a breach of contract claim, for which punitive damages cannot be recovered. The court in *Farris* was careful to

distinguish between an action in contract and one in tort. Limiting its holding to an action for breach of contract in which there is no common law right to recover punitive damages, the court explained:

> "* * * In the absence of any common law civil penalties having been recognized for the conduct in question here, the legislature provided for penalties. In doing so, it did not provide for punitive damages. We, therefore, conclude that because it was writing on a clean slate, the legislature did not intend that punitive damages result because of the public service character of the relationship. * * *" 284 Or at 467.

The action before us is in tort, for which punitive damages are authorized in appropriate cases under the common law and in wrongful death actions under ORS 30.020. When the legislature amended ORS 471.322 to provide for monetary penalties in addition to license suspension, it was not writing on a "clean slate," but with knowledge of the preexisting common law negligence remedy recognized in *Campbell* and codified in ORS 30.950. The result here is not controlled by *Farris*.

In *Brewer,* the Supreme Court held that an award of punitive damages is not authorized under the Residential Landlord and Tenant Act, because the statutory scheme itself includes differentiated provisions for compensatory and for more than compensatory damages to be recovered by the plaintiff for specified violations created by the act. The court concluded that there was no justification for superimposing on the statutory scheme an additional remedy of punitive damages for violations of the act. 287 Or at 443. The legislature created new rights and remedies when it enacted the Residential Landlord and Tenant Act, writing as it were on a "clean slate." As in *Farris,* the court declined only to add punitive damages where they did not exist and was not faced with the exclusion of a preexisting common law remedy. Neither ORS 30.950 nor ORS 471.322(1) and (2) provide a statutory scheme for more than compensatory damages to be recovered by the plaintiff that can be said to have been intended by the legislature as a substitute for punitive damages. Although punitive damages awarded to the injured party may have the same purpose as civil penalties imposed by OLCC and paid to the state, we do not accept that the civil

penalties were intended to be a statutory scheme for providing exemplary damages as was the case in *Brewer*.

It is not uncommon that two schemes of penalties aimed at deterrence and punishment coexist. For example, the availability of criminal penalties does not preclude an award of punitive damages. *Roshak v. Leathers,* 277 Or 207, 560 P2d 275 (1977); *Harrell v. Ames,* 265 Or 183, 189, 508 P2d 211 (1973). Punitive damage awards have been approved in appropriate cases to punish defendants and to deter defendants and others from like conduct. *Dorn v. Wilmarth,* 254 Or 236, 239, 458 P2d 942 (1969). In *Harrell v. Ames, supra,* the Supreme Court held that punitive damages are authorized in appropriate cases to deter persons from driving automobiles after drinking. The court explained:

> "* * * [I]n the absence of a showing of substantial evidence to the contrary, we are not prepared to hold that law enforcement officials and courts, who have a heavy responsibility in this area, are wrong in their present apparent assumption that both criminal penalties and awards of punitive damages may have at least some deterrent effect in dealing with this serious problem. [Footnote omitted.] We are also not aware of any good reasons why punitive damages should not have as much deterrent effect upon this type of wanton and reckless conduct as upon other types of conduct in which awards of punitive damages are traditionally approved by the courts." 265 Or at 190-91.

We are not prepared to hold as a matter of law that serving a visibly intoxicated person cannot be as wanton and reckless an act as driving while intoxicated. When the act of serving an intoxicated person is found to meet the requisite disregard of social obligations, an award of punitive damages may be appropriate. We cannot say that punitive damages in this case will have any less of a deterrent effect on wanton and reckless conduct than in other types of cases in which punitive damages are traditionally approved by the courts. Neither can we say that the existence of the OLCC civil penalty scheme negates the deterrent value of awarding punitive damages. The trial court did not err in holding that punitive damages are available in this action.

Defendants further claim that the evidence presented by plaintiff is not sufficient to demonstrate an aggravated disregard of defendants' duties to justify the award of punitive

damages. Viewing the evidence in the light most favorable to plaintiff, we conclude that the jury could believe that the driver had been drinking all night and was visibly intoxicated when he arrived at the tavern at 7:00 a.m. and that the bartender continued to serve him beer, bourbon and tequila over the next hour and a half when she knew or should have known that he would operate a motor vehicle on leaving the premises. The trial judge found that evidence sufficient to support an award of punitive damages and allowed the issue to go to the jury. Under the facts stated, that was not erroneous.

■■■ In an additional assignment of error, defendants claim that the trial court erred in admitting evidence of a previous OLCC citation received by the tavern for service to a visibly intoxicated person. Defendants objected to the admission of the citation received some 14 months before the accident involved in this case, because the evidence was irrelevant and "too far back." The trial court determined, and we agree, that the evidence was relevant to the tavern's knowledge of the problem relating to the negligence and gross negligence aspect of the case and was admissible under OEC 404(3). The jury could conclude that, because the tavern knew of the prohibition against serving visibly intoxicated persons, the tavern negligently failed to emphasize the rule to its employes. The citation could be viewed as warning or notice relevant to show consciousness of wrongdoing, and was therefore, relevant to the amount of punitive damages necessary to deter defendants' conduct effectively. The admission of the evidence was not error.

■■■ In a cross-appeal, plaintiff claims that defendants should be jointly and severally liable for the punitive damage awards. We do not agree.

> "There is no logic in holding one defendant liable for the share of punitive damages intended by the jury to deter the conduct of a codefendant. * * * [I]t is preferable to submit verdict forms allowing [punitive damages to be assessed independently] when there is a claim for punitive damages against more than one defendant." *Rose (Betty) v. Whitbeck, supra,* 278 Or at 467-68.

The jury in this case assessed punitive damages separately, and the judgment provided that defendants are liable only for

those punitive damages awarded against them separately. There is no error.

Affirmed.