Submitted April 2, 2021; reversed and remanded as to claims of assault and battery, otherwise affirmed May 18, 2022

Dennis Burton UNDERWOOD,
*Plaintiff-Appellant,*

*v.*

CITY OF PORTLAND et al.,
*Defendants,*

*and*

Taylor APPELO,
*Defendant-Respondent.*

Multnomah County Circuit Court
17CV47237; A173002

510 P3d 918

In this civil appeal, plaintiff challenges the trial court's entry of summary judgment on claims of assault and battery against defendant Appelo. In a previous criminal action stemming from the same confrontation, plaintiff was convicted of second-degree assault against defendant, after plaintiff raised a self-defense claim in that trial. In this civil case, the trial court concluded that the criminal conviction, rejecting self-defense, meant that plaintiff was precluded from litigating the torts of assault and battery against defendant, and that the tort claims amounted to a collateral attack on the criminal convictions. *Held*: The issues that the jury decided in rejecting plaintiff's self-defense claim in the criminal trial are not identical to the issues required to prove the assault or battery torts; therefore, issue preclusion cannot apply as a matter of law. The elements of those torts are not directed at the validity of the criminal conviction; therefore, plaintiff was not collaterally challenging that conviction.

Reversed and remanded as to claims of assault and battery; otherwise affirmed.

Katharine von Ter Stegge, Judge. (General Judgment November 26, 2019)

Stephen K. Bushong, Judge. (Supplemental Judgment November 27, 2019)

Dennis B. Underwood filed the briefs *pro se*.

Christine S. Mascal filed the brief for respondent. Also on the brief was Mascal Law Office LLC.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.

PAGÁN, J.

Reversed and remanded as to claims of assault and battery; otherwise affirmed.

**PAGÁN, J.**

This civil appeal arises from an October 2015 altercation between two men in downtown Portland: Underwood and Appelo. Plaintiff in this case, Underwood, was convicted of second-degree assault in a previous criminal action stemming from that altercation. After the conviction, Underwood filed the civil complaint in this action against, among others, defendant Appelo, asserting that Appelo had committed the torts of assault, battery, false imprisonment, and negligence against Underwood.[1]

This appeal follows the trial court's grant of summary judgment in favor of Appelo. In his first two assignments of error, Underwood contends that the trial court abused its discretion by vacating an order of default entered against Appelo and by denying Underwood's motion to reconsider the same. We reject those assignments of error without discussion. Underwood also assigns error to the trial court's granting of summary judgment to Appelo and dismissing his claims of assault and battery. For the reasons explained below, we conclude that the trial court erred by granting summary judgment to Appelo on Underwood's tort claims of assault and battery, and thus, we reverse and remand as to those claims.[2]

As noted above, Underwood contends that the trial court erred by granting summary judgment on his claims against Appelo for assault and battery.[3] The trial court stated, in its opinion and order granting summary judgment, that elements of Underwood's tort claims against Appelo were litigated as part of the criminal proceeding against Underwood. In that criminal case, Underwood had claimed that Appelo was the initial aggressor and that he struck

---

[1] Although we usually refer to the parties by their positions in the lower tribunal, to avoid confusion when discussing the previous criminal case and this civil matter on appeal, we refer to each party by their last names.

[2] Underwood did not assign error to the granting of summary judgment on the false imprisonment or negligence claims.

[3] The trial court determined that although the motion was presented as a motion to dismiss under *former* ORCP 21(A)(8) (2019), *renumbered as* ORCP 21 (A)(1)(h), because both parties cited to extensive evidence outside the pleadings, it would consider the motion as one for summary judgment under ORCP 47. Neither party challenges that determination.

Appelo with a baseball bat in self-defense. Having raised self-defense in the criminal trial, the jury was instructed that:

> "The defense of self-defense has been raised. A person is justified in using physical force on another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force. In defending, a person may only use that degree of force which he reasonably believes to be necessary. The burden of proof is on the state to prove beyond a reasonable doubt that the defense does not apply."

The trial court observed that although the jury rendered only a general verdict in finding plaintiff guilty of second-degree assault, in doing so, the jury must have rejected plaintiff's self-defense claim. The trial court concluded that, by rejecting Underwood's self-defense claim, the jury found beyond a reasonable doubt that Underwood "was the aggressor and was not acting in self-defense," thus it was impossible for Underwood to subsequently establish by a preponderance of the evidence any of the torts he claimed against Appelo. Moreover, the trial court reasoned that Underwood's tort claims amounted to an impermissible collateral attack on his conviction, and therefore also required dismissal of the claims. The trial court stated that, "[b]ecause [Underwood] was convicted of Assault in the Second Degree after he made the claim of self-defense, there is no genuine issue of material fact on any of [Underwood's] claims."

This appeal requires us to determine to what extent, if any, issues decided in the criminal proceeding against Underwood preclude him from litigating the torts of assault (claim 1) and battery (claim 2) against Appelo in this civil proceeding. Appelo contends that by convicting Underwood of second-degree assault, the jury concluded that "[Appelo] did not attack [Underwood] and did not cause the altercation" and that, therefore, Underwood is collaterally estopped from litigating his assault and battery claims against Appelo in this case. Underwood disagrees and argues, in part, that "[p]roving [Underwood] assaulted Appelo doesn't prove Appelo didn't commit torts of assault and battery." Underwood is correct about that and, as we explain below,

Appelo was not entitled to prevail as a matter of law on the assault and battery claims for relief.

In an appeal from a grant of summary judgment, "we view the facts and all reasonable inferences that may be drawn from them" in favor of the nonmoving party, in this case, Underwood. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 638, 20 P3d 180 (2001). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing ORCP 47 C). For context and to explain the possible bases on which the jury could have concluded that Underwood was guilty of second-degree assault, despite the claim of self-defense, we summarize each side's theories of the criminal case.

The state presented a theory of the case that, while skateboarding home from work with a grocery bag under his arm, Appelo heard a woman screaming. Appelo did not have a good look from where he was, but as he skated about a block further, he could see Underwood "in the alcove area, [and] a shiny object in the air. He saw that it was Mr. Underwood swinging a bat at a woman, and she was screaming for help." Appelo set his bags down, skated closer to the alcove, and yelled out, "Leave her alone, or I'm calling the cops." At that point, Underwood came after Appelo, causing Appelo to back up, pick up his skateboard to "block the jabs" Underwood was making toward him with the baseball bat, and, finally, "instinctively [bring] up his left hand" to block a blow from the baseball bat. Underwood swung the bat, hitting Appelo's left arm and breaking it. The state argued that there was no dispute that Underwood caused the broken arm and that Appelo was injured.

The issue, as the state framed it, was whether Underwood's actions were in self-defense. The state argued to the jury, "Keep in mind that Mr. Underwood has to believe—he has to reasonably believe that he's in danger of imminent serious physical injury from Mr. Appelo. He also has to use the use of force in response to that threat that's reasonable under the circumstances." The state further argued that Appelo had the right to intervene to defend the

woman, because he reasonably believed that the woman was in danger.[4]

Underwood presented a far different account of the altercation to the jury. According to Underwood, he had taken the baseball bat away from another woman who was threatening his girlfriend. Underwood and his girlfriend "walk[ed] around the block [to] let [the other woman] calm down." On their walk, Underwood and his girlfriend came across a mutual friend, and began chatting in the alcove. While chatting with the mutual friend, Underwood and his girlfriend got in an argument; his girlfriend yelled and ran away from Underwood. At that point, Appelo arrived on his skateboard and "ordered [Underwood] to put the bat down." After some verbal confrontation, Underwood started walking away from Appelo, who followed him at about the distance of 15 feet and eventually "swung the skateboard at [Underwood]." According to Underwood, at one point during multiple swings of the skateboard, Appelo switched to holding the skateboard in his left hand but became injured and backed away. Underwood testified, "I guess it would seem obvious, but once Appelo started hitting me with the skateboard I definitely felt fear for my safety and I definitely felt like I was in danger, you know."

During his closing argument, Underwood argued that he was "confronted by a stranger on a skateboard on a dark street late at night. Appelo then began giving me commands, still armed with a skateboard, then began trying to pummel me with a skateboard." Underwood said that he used the minimum amount of force to defend himself, and that both his fear and that his defense of himself was reasonable.

The jury found Underwood guilty of second-degree assault. The jury's determination of criminal liability leads to the inescapable conclusion that it rejected Underwood's

---

[4] In addition to the self-defense instruction for Underwood, the jury was instructed that

"[a] person is justified in using physical force on another person to defend a third party from what he reasonably believes to be the use or imminent use of unlawful physical force. In defending, a person may only use that degree of force which he reasonably believes to be necessary."

claim of self-defense. As we understand the choices that were presented to the jury in the criminal trial, it could have found Underwood guilty for a number of reasons, all turning on how it considered the self-defense claim. First, the jury could have completely credited Appelo's version of the events and discounted Underwood's version. Implicit in that determination is that Appelo did not make intentional physical contact with Underwood and that any contact with Underwood was incidental to Appelo's attempts to block the attack. Second, the jury could have found that Appelo initiated a verbal confrontation but could have rejected Underwood's argument that his fear of Appelo was reasonable. Third, the jury could have found that Appelo was the initial aggressor and that Underwood's fear was reasonable but rejected the argument that Underwood's use of force was reasonable. Finally, the jury could have found that Underwood was in fact attacking the woman with a bat, that the force Appelo used in defending her was justified, and that Underwood could not claim self-defense as he initiated the entire violent encounter. Any of those reasons would have been sufficient for the jury to reject Underwood's self-defense claim, but as we will explain, in this case, none are preclusive as to whether Appelo committed the torts of assault and battery against Underwood.

Issue preclusion arises in subsequent proceedings when an "issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993). If a tribunal has decided an issue,

> "the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:
>
> "1.   The issue in the two proceedings is identical.
>
> "2.   The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
>
> "3.   The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
>
> "4.   The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5.   The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Id.* at 104 (citations omitted). Issue preclusion may bar relitigation of factual or legal issues raised in the earlier adjudication. *Thomas v. U.S. Bank National Association*, 244 Or App 457, 472, 260 P3d 711, *rev den*, 351 Or 401 (2011). At the summary judgment stage, issue preclusion applies as a matter of law only if it can be conclusively established from the record that "all the *Nelson* requirements [are] satisfied." *Barackman v. Anderson*, 338 Or 365, 372, 109 P3d 370 (2005). The outcome of this appeal turns on the first two requirements.

In this case, the precise issues that we can infer from the jury verdict in the criminal trial are that Underwood did actually assault Appelo and that Underwood's actions were not justified by self-defense. Beyond those inferences, we can only speculate as to why the jury rejected Underwood's claim of self-defense. However, those issues that were decided by the jury are not dispositive as to whether Appelo committed the torts of assault or battery against Underwood. *See Flowers v. Campbell*, 81 Or App 437, 440, 725 P2d 1295 (1986) (victim's use of more force than justified not defense to crime of assault); *Linkhart v. Savely*, 190 Or 484, 497, 227 P2d 187 (1951) (aggressor may still recover in tort if victim used more force than necessary to repel the aggression).[5] The issue that Underwood is precluded from relitigating is whether his use of force against Appelo was justified, because the jury's rejection of Underwood's self-defense claim determined it was not. *See Roshak v. Leathers*, 277 Or 207, 210, 560 P3d 275 (1977) (tort defendant precluded from litigating self-defense privilege when self-defense was litigated and rejected against defendant in criminal trial).

Whether Appelo committed the torts of assault or battery against Underwood—the issue raised in this civil litigation—is not the same issue as whether Underwood's

_____

[5] For example, the jury could have found that Appelo used force against Underwood but was not justified in using the degree of force that he did to defend the woman from Underwood's attack; or that Underwood was not justified in using the degree of force that he did to repel Appelo's attack. Those findings would not change whether the jury could have found Underwood guilty by rejecting the criminal self-defense claim.

assaultive conduct was justified under criminal law, which was previously determined in the criminal trial. As instructed, the jury had to find beyond a reasonable doubt that Underwood's assault of Appelo was not justified by self-defense. The elements of self-defense in the criminal context are (1) "a person is justified in using physical force upon another person for self-defense *** from what the person *reasonably believes to be the use or imminent use of unlawful physical force*"; and (2) that person "may use a degree of force which the person reasonably believes to be necessary for the purpose." ORS 161.209 (emphasis added). In contrast, the general elements of the tort of assault are (1) a person acts, intending to either; (2) cause harmful or offensive contact with another person or to cause another person apprehension of imminent harmful or offensive contact with that other person; and (3) *the other person reasonably believes a harmful or offensive contact would occur. Cook v. Kinzua Pine Mills Co. et al*, 207 Or 34, 47, 293 P2d 717 (1956); *Restatement (Second) of Torts* § 21 (1965). The common element between criminal law self-defense on one side and the tort of assault on the other is the reasonable belief of the actor that unlawful physical force is being used or will imminently be used against that actor.[6] Thus, for the assault claim, the only issue that could possibly be precluded in this case is whether Underwood reasonably believed that Appelo was using or was imminently going to use unlawful physical force against him. To be sure, if that was the reason the jury rejected Underwood's self-defense claim in the criminal trial, Underwood would be precluded as a matter of law from establishing one of the elements of assault, and thus summary judgment would be appropriate. But, as previously noted, that is but one possible reason the jury rejected the self-defense claim.

The tort of battery requires (1) a person act with intent to cause harmful or offensive contact with another person, and (2) those actions directly or indirectly cause a harmful or offensive contact with that other person. *Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976);

---

[6] We assume for the sake of argument that unlawful physical force would almost always be harmful or offensive.

*Restatement* §§ 13, 18. Therefore, there are no common elements that would be preclusive between self-defense and the tort of battery. Had the jury in the criminal trial made a factual determination that Appelo did not make contact with Underwood, issue preclusion would apply to the battery claim. But, again, we cannot presume that finding by the jury because there are multiple reasons the jury could have rejected the self-defense claim.

Further, even in instances where a proponent of issue preclusion can demonstrate that the issues are indeed identical between the earlier and later actions, the proponent must also demonstrate that the second *Nelson* factor is met—that the specific issue was actually litigated and was essential to a final decision on the merits in the earlier adjudication. *Nelson*, 318 Or at 104. To satisfy that requirement, the prior "resolution of an issue must either be apparent from the face of a judgment or order or, if not apparent from the face [thereof], must have been necessary to the resolution of the prior adjudication." *Leach v. Scottsdale Indemnity Co.*, 261 Or App 234, 240, 323 P3d 337, *rev den*, 356 Or 400 (2014). If not stated on the face of the judgment, whether an issue was actually litigated and necessary to the prior adjudication requires an examination of the facts and circumstances of the prior adjudication. *Heller v. Ebb Auto Co.*, 308 Or 1, 6-7, 774 P2d 1089 (1989); *see also Casey v. N. W. Security Ins. Co.*, 260 Or 485, 492, 491 P2d 208 (1971) (factfinder must have determined issue of mental state in criminal trial); *Berg v. Benton*, 297 Or App 323, 328, 443 P3d 714 (2019) (factfinder must have determined causation in criminal trial). When the prior adjudication could have turned on multiple exclusive bases, absent an express finding of a particular reason, an issue is generally not considered to be actually litigated and necessary to the prior adjudication. *See Heller*, 308 Or at 6-7 (explaining multiple reasons that the prior tribunal could have concluded the way it did and therefore why that issue could not be precluded). As noted, the jury in the criminal trial could have rejected Underwood's self-defense claim for a number of reasons, any of which would have been legally sufficient for that purpose, but it does not follow that any identical issues between the criminal case and civil case were necessarily decided.

Finally, Appelo argued below, and the trial court agreed, that the claims amounted to an impermissible collateral attack on Underwood's criminal conviction. Relying on *Heck v. Humphrey*, 512 US 477, 114 S Ct 2364, 129 L Ed 2d 383 (1994), the trial court stated that an alternative reason to grant summary judgment was that the claims impermissibly sought to undo Underwood's convictions. However, *Heck* involved 42 USC section 1983 claims that directly attacked the underlying elements of a plaintiff's underlying criminal convictions, including malicious prosecution and false imprisonment. The Supreme Court stated that those claims necessarily required a judge or jury to find that the underlying convictions were invalid because of the elements specific to those claims. *Heck*, 512 US at 483-84 (holding that a section 1983 claim for malicious prosecution must be preceded by the criminal matter being terminated in a plaintiff's favor); *see also Thompson v. Clark*, 596 US ___, 142 S Ct 1332, 212 L Ed 2d 328 (2022) (section 1983 plaintiff only needs to show prosecution ended without a conviction). Because we conclude that the claims Underwood raised against Appelo would not necessarily challenge the validity of his underlying convictions, it follows that Underwood was not collaterally attacking his convictions with those claims, and *Heck* is inapposite. To the extent the trial court found that Underwood was impermissibly making a collateral attack on his criminal conviction through the assault and battery claims, the court erred.

Reversed and remanded as to claims of assault and battery; otherwise affirmed.